NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**LEGO A/S, LEGO SYSTEMS, INC., LEGO JURIS A/S,**
*Plaintiffs-Appellees*

**v.**

**ZURU INC.,**
*Defendant-Appellant*

———————————

2019-2122

———————————

Appeal from the United States District Court for the District of Connecticut in No. 3:18-cv-02045-AWT, Senior Judge Alvin W. Thompson.

———————————

Decided: January 15, 2020

———————————

ELIZABETH A. ALQUIST, Day Pitney LLP, Hartford, CT, argued for plaintiffs-appellees. Also represented by JOHN W. CERRETA.

JOHN WILLIAM LOMAS, JR., Dentons US LLP, Washington, DC, argued for defendant-appellant. Also represented by TAMI LYN AZORSKY, ROBERT TYLER GOODWYN.

———————————

Before WALLACH, CLEVENGER, and HUGHES, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

This is an interlocutory appeal of Appellant, ZURU Inc. ("ZURU"), from an order of the District Court for the District of Connecticut granting Appellees LEGO A/S ("LAS"), LEGO Systems, Inc. ("LSI"), and LEGO Juris A/S ("LJAS") (collectively, "LEGO") a preliminary injunction directed to ZURU products accused of infringing various LEGO copyrights, trademarks, and design patents. *LEGO A/S v. ZURU Inc.*, No. 3:18-cv-2045(AWT), 2019 WL 4643718 (D. Conn. July 8, 2019). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1292(a), (c) and 1295(a). For the reasons discussed below, we affirm-in-part, vacate-in-part, and remand.

BACKGROUND

I. Facts

On December 13, 2018, Appellee, LEGO, filed a Verified Complaint in the District of Connecticut against Appellant, ZURU. LEGO is an industry leader in designing and manufacturing toys and play materials for children of all ages worldwide, including toy building elements, figurines, and toy sets in the construction toy category. ZURU is a corporation formed under the laws of the British Virgin Islands that has offices in Hong Kong and similarly designs, manufactures, and markets toys and consumer products.

ZURU launched its allegedly infringing products (*i.e.*, the ZURU Action Figures, Max Build More Bricks, and MAYKA Toy Tape) in early October 2018. On November 12, 2018, LEGO demanded by letter that ZURU cease and desist from the sale of products that allegedly infringe LEGO's patents, trademarks, and copyrights. The letter requested compliance by November 26, 2018. When no substantive answer was received, LEGO sent a second

demand letter to ZURU on December 3. On December 5, ZURU provided LEGO with a substantive response stating that it would not cease sale of the Max Build More products and would not comply with LEGO's demands.

Thereafter, LEGO informed ZURU that it would be filing suit and seeking a temporary restraining order ("TRO"). In response, on December 13, ZURU sent another email claiming it would remove the allegedly infringing products from its website and that it would recall products currently with Walmart to moot any need for LEGO to file for a TRO or preliminary injunction. However, because LEGO believed ZURU's products remained up on the Walmart website for sale, LEGO sought relief from the court.

## II. Procedural History

Contemporaneous with the filing of its Complaint, LEGO moved on December 13, 2018 for a TRO and preliminary injunction in the District of Connecticut restraining ZURU from manufacturing, selling, offering for sale, displaying, and importing products that allegedly infringe LEGO's copyrights, trademarks, and design patents.

The District of Connecticut heard the evidence and argument of the parties, and then promptly granted a TRO at a December 14, 2018 hearing. The district court then considered a full round of briefing, considered the parties' evidence at a two-day preliminary-injunction hearing on February 14–15, 2019, and granted LEGO's motion for preliminary injunctive relief on July 8, 2019.

This is an interlocutory appeal of the district court's order granting a preliminary injunction. ZURU timely noticed this appeal the day after the district court entered its order granting a preliminary injunction.

STANDARD OF REVIEW

When reviewing the grant of a preliminary injunction as to alleged trademark or copyright infringement, legal issues over which it does not have exclusive subject matter jurisdiction, this Court applies the law of the regional circuit. *Nitro Leisure Prods., L.L.C. v. Acushnet Co.*, 341 F.3d 1356, 1359 (Fed. Cir. 2003); *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 837 (Fed. Cir. 1992). In the Second Circuit, a party seeking a preliminary injunction must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of injunctive relief; (3) that the balance of hardships favors the moving party; and (4) that the public interest would be served. *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010). The Second Circuit reviews a district court's decision to grant a preliminary injunction for abuse of discretion. *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011); *Red Earth LLC v. United States*, 657 F.3d 138, 144 (2d Cir. 2011). In the Second Circuit, a district court has necessarily abused its discretion when it has "'(1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions.'" *Oneida*, 645 F.3d at 164 (quoting *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009)). "Under abuse of discretion review, the factual findings and legal conclusions underlying the district court's decision are 'evaluated under the clearly erroneous and *de novo* standards, respectively.'" *Id.* (quoting *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 103 (2d Cir. 2009)).

On the other hand, when reviewing the grant of a preliminary injunction as to alleged patent infringement, this Court applies its own precedents. *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) ("[A] preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 involves substantive matters unique to patent law and, therefore, is governed by the law

of this court." (quotation and citation omitted)). To obtain a preliminary injunction, a party must establish "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Like the Second Circuit, this Court reviews a district court's decision granting a motion for preliminary injunction under an abuse of discretion standard. *Id.* at 1351–52. An abuse of discretion has occurred when "the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1353 (Fed. Cir. 2008) (quoting *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir. 1996)).

DISCUSSION[1]

## I. The ZURU Action Figures

The first issue we consider is the district court's entrance of a preliminary injunction on the MAX Build More 15 MAX Figures set (the "ZURU Action Figures") for its alleged infringement of registered LEGO copyrights and trademarks. Both parties have acknowledged that should this Court affirm the district court's entrance of a preliminary injunction as to the ZURU Action Figures for either of LEGO's copyright or trademark infringement claims, the product remains enjoined. Because we conclude that the

---

[1] For each of the various products covered by the district court's preliminary injunction, ZURU contests some, but not all, of the factors necessary to secure a preliminary injunction. We address only those factors contested by ZURU on appeal.

district court did not abuse its discretion in entering the preliminary injunction with respect to LEGO's copyright infringement claim as to the ZURU Action Figures, we do not reach ZURU's alleged trademark infringement for purposes of this appeal.

## A.  Likelihood of Success on the Merits

To maintain an action for copyright infringement in the Second Circuit, "a plaintiff must establish '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  The district court found, and ZURU does not dispute, that LEGO owns valid copyrights, including Registration Numbers VA0000655230 and VA0000655104 (the "Minifigure Copyrights"), covering the 3D sculpture of certain figurines (the "Minifigure Figurines").

  

Registration Number VA0000655230        Registration Number VA0000655104

"To satisfy the second element, plaintiff 'must also show copying by defendants. . . .  Copying may be inferred where a plaintiff [1] establishes that the defendant had access to the copyrighted work and [2] that substantial similarities exist as to protectible material in the two works.'" *Leary v. Manstan*, 118 F. Supp. 3d 460, 465 (D. Conn. 2015) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986)).  The district court found, and ZURU does not dispute, that ZURU had access to LEGO's products.

Thus, the only dispute was whether substantial similarities exist as to protectible material in the LEGO Minifigures and ZURU Action Figures.

As previously noted, the ZURU Action Figures became available for sale to the public though Walmart retail locations and the Walmart Website on or about October 1, 2018.



Representative ZURU Action Figure

LEGO maintains the ZURU Action Figures are substantially similar to the overall look and feel of LEGO's Minifigure Figurine, one of LEGO's most iconic construction toys. The district court agreed.

On appeal, ZURU argues: (1) that the district court's analysis of LEGO's likelihood of success on its copyright claim against the ZURU Action Figures was fundamentally flawed because the district court improperly relied on LEGO's expert's comparisons of the allegedly infringing ZURU Action Figures to LEGO Minifigures instead of to the LEGO copyright registration images;[2] and (2) that if the district court's approach was acceptable, the court still made clearly erroneous factual findings because the ZURU Action Figure designs are different and distinct from the

---

[2]    While LEGO argues that ZURU attempts to raise this issue for the first time on appeal, ZURU raised it below. *See* J.A. 560–63; J.A. 601; J.A. 613; J.A. 1129.

LEGO product designs. We disagree for the reasons discussed below.

We begin by addressing the propriety of the district court's comparison of the ZURU Action Figures to actual LEGO Minifigures, rather than the copyright images. As an initial matter, LEGO's expert, Ms. Knight, upon whom the district court relied, testified that, in addition to comparing the ZURU Action Figures with LEGO Minifigures, she did compare the ZURU Action Figures to the LEGO copyright registration images in coming to her conclusions. *See* J.A. 1446. Specifically, Ms. Knight testified that as part of her analysis, she reviewed all the images shown on page 2 of her power point, including the image from copyright registration VA0000655104, with the ZURU Action Figure. *See* J.A. 1446–47 (citing J.A. 1627). Nevertheless, Ms. Knight's, and the district court's, additional comparison of the allegedly infringing ZURU Action Figures to the LEGO Minifigures was proper.

To bolster its argument, ZURU alleges that such a comparison was an improper comparison of allegedly infringing works, *i.e.*, the ZURU Action Figures, to unregistered derivative works. The LEGO Minifigures identified in ZURU's brief, however, are not derivative works. A "derivative work," "must incorporate some or all of a 'preexisting work' *and add new original copyrightable authorship to that work.*" *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, No. 3:11-cv-01586 (CSH), 2019 WL 3387330, at *9 (D. Conn. 2019) (citing United States Copyright Office, Copyright In Derivative Works and Compilations (2013), https://www.copyright.gov/circs/circ14.pdf (emphasis added)).

As ZURU acknowledges, LEGO has a registered copyright entitled "Basic Minifigures" and alternatively titled "Figures with jackets, helmets, or crash helmets." Appellant's Br. at 35. The LEGO Minifigure analyzed by Ms. Knight and the district court is just that—a basic

minifigure wearing a jacket.  Indeed, the copyrightable elements of the Minifigure Copyrights and the Minifigure sculptures relied upon by the district court are the same — *i.e.*, apart from the medium in which they are conveyed, there are no material differences between the LEGO Minifigure sculptures and the corresponding copyright images.[3]

The Second Circuit has squarely held that translation of a work to a different medium does not demonstrate sufficient originality to warrant additional copyright protection.  *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491 (2d Cir. 1976) (finding that because "translation [of a work of art] to a different medium" is "merely a trivial variation," creating a plastic version of a cast iron "Uncle Sam" toy coin bank in the public domain lacked the originality to support a copyright).  Thus, the shift in medium from a copyright registration image to sculpture does not add the original copyrightable authorship necessary to constitute a derivative work.  Therefore, the analyzed LEGO Minifigures are not, as ZURU contends, unregistered derivative works—they are physical embodiments of the copyrighted images.  And, as this Court has held in the design patent context, "[w]hen no significant distinction . . . has been shown between the [registered] drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the . . . design with the accused devices."  *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988).  Accordingly, we find that the district court did not commit legal error in comparing the allegedly infringing ZURU Action Figures to the physical embodiment of the basic minifigures seen in LEGO's copyright registrations.

---

[3]    Though the Minifigure sculpture analyzed by Ms. Knight differed from the Minifigure Copyright Image in facial expression and jacket color, for the reasons discussed *infra*, such differences are not material.

LEGO A/S v. ZURU INC.

Nevertheless, even if the district court and Ms. Knight's additional comparisons to the Minifigure Figurines were legal error, ZURU identifies no material differences between the figures depicted in the LEGO copyright registrations and the ones the district court and Ms. Knight compared to the ZURU Action Figures. To the contrary, ZURU's arguments on appeal apply equally to the Minifigure Copyright images and the LEGO Minifigure viewed by the district court. *Compare* J.A. 621-32 *with* Appellant's Br. at 38-39; *see also* J.A. 1811–18; J.A. 1842. Accordingly, we find that even if ZURU had shown that the district court compared the wrong figure to the allegedly infringing ZURU Action Figures, it was harmless error.

Next, we address ZURU's argument that the district court made clearly erroneous factual findings because the ZURU Action Figure designs are allegedly different and distinct from the LEGO product designs. Specifically, ZURU argues that Ms. Knight and the district court improperly relied on a vague concept of a similar feel between LEGO Minifigures and the accused ZURU Action Figures, without discussing any specific similarities in the artistic expression. And, according to ZURU, a general sense of similarity is not sufficient. Appellant's Br. at 36 (citing *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 912–13 (2d Cir. 1980); *see also Belair v. MGA Entm't, Inc.*, 503 F. App'x. 65, 67 (2d Cir. 2012)).[4] Rather than examining the

---

[4]    ZURU's cited cases do not support this argument. *Durham* dealt with distinguishing an expression of an idea from an idea itself. *Durham*, 630 F.2d at 912. And, in *Belair*, the Second Circuit made clear that the test *is* whether there are similarities in aesthetic appeal. 503 F. App'x at 67. There is no contention in this case that Ms. Knight or the district court improperly compared ideas— indeed, it is undisputed that Ms. Knight and the district court compared artistic expressions of those ideas, *i.e.*, the

works for their similar concept and feel, ZURU asks the Court to take note of specific differences in shape, expression, and proportions between the LEGO Minifigures and the ZURU Action Figures. Such an analysis is fundamentally at odds with Second Circuit precedent, and we necessarily follow the Second Circuit test for substantial similarity.

As the district court correctly noted, in the Second Circuit:

> The standard test for substantial similarity between two items is whether an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." If "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work," then the two products are substantially similar. The fact-finder must examine the works for their "total concept and feel."

*LEGO*, 2019 WL 4643718, at *4 (citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (internal citations omitted)). "Consideration of the total concept and feel of a work . . . is especially appropriate in an infringement action involving children's works, because children's works are often less complex than those aimed at an adult audience." *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) (citing *Reyher v. Children's Television Workshop,* 533 F.2d 87, 91 (2d Cir. 1976), *cert. denied,* 429 U.S. 980 (1976)). Because the standard for determining substantial similarity is whether an ordinary observer, *unless he set out to detect the disparities*, would be disposed to overlook

---

actual LEGO Minifigures and the ZURU Action Figures. *See LEGO*, 2019 WL 4643718, at *4–6.

LEGO A/S v. ZURU INC.

them, and regard the aesthetical appeal the same,[5] the district court found that the total concept and feel of the ZURU Action Figures is substantially similar to that of LEGO's Minifigure Figurine. Where, as here, ZURU only identifies alleged disparities between the two products and has failed to demonstrate instead that the "total concept and feel" of the two works is different, we see no reason to disagree with the district court's finding on substantial similarity.

For these reasons, we affirm the district court's finding that LEGO is likely to succeed on the merits of its copyright infringement claim against the ZURU Action Figures.

## B. Irreparable Harm

On appeal, ZURU also argues that the district court clearly erred in finding that LEGO would suffer irreparable harm based on LEGO's claims of intergenerational harm that are too speculative and remote to constitute actual and imminent harm absent an injunction. Additionally, because ZURU argues that benefit to ZURU does not necessarily mean injury to LEGO, any reliance on increased sales or market share by ZURU is not enough to show harm to LEGO.

---

[5] ZURU argues that the district court erred in this case in finding that the "lay observer" is an adult, as opposed to the children the toys are designed for. However, because ZURU raises this argument for the first time in its reply brief, we find that it has been waived. *Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("[C]ourts have consistently concluded that the failure of an appellant to include an issue or argument in the opening brief will be deemed a waiver of the issue or argument." (citing *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990))).

Responding to these arguments below, the district court found that: (1) "the construction toy market is highly competitive and . . . selling products that infringe on . . . LEGO['s] . . . copyrights would allow ZURU . . . to increase its sales and market share, and would also enable it to establish relationships with customers for whom . . . LEGO . . . competes," *LEGO*, 2019 WL 4643718, at \*17; and (2) LEGO would likely suffer lost goodwill and damaged reputation absent an injunction. With respect to the latter finding, the district court relied on a social media post noting that while ZURU's Action Figures were "[a]wesome," a problem is that "the bod[ies] come[] apart extremely easily." J.A. 361. The risk of consumers associating defective products with the LEGO brand-name is apparent. According to the district court, "[t]hese injuries are unquantifiable." *LEGO*, 2019 WL 4643718, at \*17.

Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer. *Salinger*, 607 F.3d at 81. Thus, where LEGO's "losses would be difficult to measure and monetary damages would be insufficient to remedy the harms," the Second Circuit has found that irreparable harm is likely. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 286 (2d Cir. 2012).

Accordingly, we find that the district court did not abuse its discretion in finding a likelihood of irreparable harm to LEGO absent a preliminary injunction.

## C. Balance of the Hardships

In addition to showing a likelihood of success on the merits and irreparable harm, a party seeking a preliminary injunction must demonstrate that the balance of hardships favors the moving party. *Salinger*, 607 F.3d at 79–80. As with irreparable harm, ZURU argues that the district court clearly erred in its balance of the hardships analysis. We disagree. ZURU previously argued to the district court that, "the harm of a preliminary injunction on

ZURU would be enormous," because "ZURU has already lost millions of dollars in sales because of the TRO and stands to lose over $10 million in 2019," "ZURU has already had its relationships with retailers damaged, and those relationships will likely be destroyed if a preliminary injunction is entered," and ZURU's loss in "shelf space" would result in "crucial harm." J.A. 1175. ZURU makes the same arguments on appeal.

The district court correctly recognized below, however, that, "defendant's injuries [would] result solely from its own deliberate acts of infringement engaged in despite the fact that . . . LEGO . . . sent ZURU . . . cease and desist letters in connection with the issues raised in this litigation and had previously done so in 2017." *LEGO*, 2019 WL 4643718, at *17. According to the Second Circuit, "[i]t is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product." *WPIX*, 691 F.3d at 287 (internal citations omitted).

Accordingly, we find that the district court did not abuse its discretion in finding that the balance of hardships weighed in favor of granting a preliminary injunction.

*       *       *

For these reasons, we hold that the district court did not abuse its discretion in granting LEGO a preliminary injunction against the ZURU Action Figures for their alleged infringement of the Minifigure Copyrights.

## II. The Max Build More Bricks

LEGO has obtained design patents in the United States for its bricks and building elements. LEGO owns the following patents that are at issue on appeal: U.S. Patent No. D688,328S (the "'328 Patent"); U.S. Patent No. D641,053S (the "'053 Patent"); and U.S. Patent No. D614,707S (the "'707 Patent") (collectively the "Asserted Patents."). U.S. Patent No. D701,923S (the "'923

Patent") is a subject of LEGO's action before the district court but not of the motion for a preliminary injunction.

LEGO contends that ZURU manufactures and sells, among other things, certain building bricks that are substantially similar to the Asserted Patents in at least three different products: the MAX Build More Building Bricks Value Set (759 Bricks); MAX Build More Building Bricks Value Set (253 Bricks); and the MAX Build More Building Bricks Accessories and Wheels Value Set (250 Pieces). The district court agreed, finding that "a side-by-side comparison in this case reveals that each Infringing Brick utilizes the same design features as the design for the corresponding LEGO brick covered by an Asserted Patent." *LEGO*, 2019 WL 4643718, at *13.

On appeal, ZURU does not dispute the district court's finding that LEGO is likely to succeed on the merits of its design patent infringement claim, and instead only disputes the district court's findings that LEGO will likely suffer irreparable harm and that the balance of the equities tips in LEGO's favor. For the reasons discussed below, we find that the district court abused its discretion in making those determinations.

## A. Irreparable Harm

A party seeking a preliminary injunction must establish that it is likely to suffer irreparable harm if the preliminary injunction is not granted and there is a causal nexus between the alleged infringement and the alleged harm. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1360 (Fed. Cir. 2013). Evidence of potential lost sales alone does not demonstrate irreparable harm. *See Abbott Labs. v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006). However, as this Court has repeatedly held, loss of revenue, goodwill, and market position are evidence of irreparable harm. *See, e.g.*, *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008) (loss of revenue and market share are evidence of irreparable harm); *Purdue*

*Pharma L.P. v. Boehringer Ingelheim GmbH,* 237 F.3d 1359, 1368 (Fed. Cir. 2001) (likelihood of price erosion and loss of market position are evidence of irreparable harm); *Bio–Tech. Gen. Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1566 (Fed. Cir. 1996) (loss of revenue, goodwill, and research and development support constitute irreparable harm); *Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 975–76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated, and is evidence of irreparable harm).  Where the injury cannot be quantified, no amount of money damages is calculable, and therefore the harm cannot be adequately compensated and is irreparable.  *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017).

At oral argument, counsel for LEGO stated that the district court relied on two things to show irreparable harm:  (1) that absent an injunction, LEGO would effectively be forced into a compulsory license; and (2) that LEGO would suffer a loss of goodwill and brand equity because the accused Max Build More Bricks' "clutch power," *i.e.*, their ability to remain stuck together, is inferior.  *See* Oral Arg. at 20:55–22:15, http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2019-2122.mp3 ("There are two instances that the court found for irreparable harm on the blocks.  One is that it would become a compulsory license. . . [T]he other is again, is the clutch power.").  However, counsel for LEGO admitted that the compulsory license argument is circular, because the result of not being enjoined necessarily entails allowing the alleged infringer to continue selling their accused products in every case. *See* Oral Arg. at 21:58–22:06, http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2019-2122.mp3.    Additionally, when pressed, counsel for LEGO could not point to any record cite supporting the notion that the Max Build More Bricks, as opposed to the ZURU Action Figures, had inferior "clutch power."   Oral Arg. at 22:28–23:45, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=

2019-2122.mp3.   After reviewing the evidence of record, this Court finds that the only references to "clutch power" are with respect to the allegedly infringing ZURU Action Figures, not the Max Build More Bricks.   Thus, LEGO's compulsory license and "clutch power" arguments are insufficient to show that LEGO would likely suffer irreparable harm absent a preliminary injunction on the allegedly infringing Max Build More Bricks.

In support of its finding, however, the district court also found that LEGO has "shown that the patent infringement will lead to . . . LEGO . . . losing market share." *LEGO*, 2019 WL 4643718, at *16.  Specifically, the district court found that LEGO's bricks covered by the Asserted Patents and the corresponding Max Build More Bricks are virtually indistinguishable[6] and that, as a result, LEGO is at risk of losing sales and market share to the defendant. However, as counsel for LEGO admitted at oral argument, there is no evidence of this.  *See* Oral Arg. at 22:16–22:28, http://oralarguments.cafc.uscourts.gov/default.aspx?fl= 2019-2122.mp3 (Q.  "Is there any market share, or potential loss of market share, directly attributable to these few bricks?"  A.  "[T]o the few bricks, specifically, no.  There was no record evidence of that.").

Accordingly, because every stated rationale for the district court's finding is either incorrect or unsupported, we find that the district court abused its discretion in finding that LEGO would likely suffer irreparable harm absent a preliminary injunction with respect to its design patent infringement claims.

---

6   As noted above, ZURU does not appeal this finding and instead argues only that LEGO is not "threatened if a few of the 250, [253], or 759 bricks that come in the ZURU brick sets infringe the LEGO Design Patents."  Appellant's Br. at 65.

## B. Balance of the Equities

To obtain a preliminary injunction, a party must also establish "that the balance of equities tips in [its] favor." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) (quoting *Winter*, 555 U.S. at 20). It was within the court's discretion to balance the equities. *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1234 (Fed. Cir. 1985).

For the reasons discussed above with respect to the ZURU Action Figures, the district court did not abuse its discretion in finding that ZURU's injuries result solely from its own deliberate acts of alleged infringement. Nevertheless, because we find that the district court incorrectly found that LEGO would be irreparably harmed absent an injunction directed to the allegedly infringing Max Build More Bricks, ZURU's own inability to show harm does not prevent us from finding that LEGO, as the party seeking a preliminary injunction, failed to demonstrate that the balance of equities tips in its favor. *Luminara*, 814 F.3d at 1352.

Accordingly, we find that the district court abused its discretion in finding that the balance of the equities with respect to the design patent infringement claim favors LEGO.

\*   \*   \*

For these reasons, we find that the district court abused its discretion and vacate its entrance of a preliminary injunction on the allegedly infringing Max Build More Bricks.

## III. The MAYKA Toy Tape Packaging Image

LEGO introduced its Friends™ line of toy products in 2012. This line includes a series of miniature figurines (the "Friends Figurines") representative of LEGO© Friends™ characters. LEGO owns copyrights registered with the

United States Copyright Office, *i.e.* Registration Numbers
VA 1-876-291, VA 1-876-279, VA 1-876-378, and VA 1-876-
373 (the "Friends Copyrights"), which protect the 3D sculp-
ture and derivative works of the Friends Figurine. Since
at least 2012, LEGO has continuously displayed '© LEGO'
in the plastic of the Friends Figurine in various elements
of the Friends Figurine, such as on top of the head element.

LEGO contends that "ZURU uses an image on product
packaging for its Mayka Toy Block Tape that is strikingly
and substantially similar to the overall look and feel of the
Friends Copyrights." *See LEGO*, 2019 WL 4643718, at *2
(internal citations omitted). The district court agreed, find-
ing that LEGO has shown that the Friends Figurine has
protectable elements, that LEGO demonstrated a likeli-
hood of success on the merits of its Friends Copyrights in-
fringement claim, that LEGO is likely to suffer irreparable
harm absent an injunction, and that the balance of the
hardships tips in LEGO's favor. For the reasons discussed
below, we find that the district court abused its discretion
in entering a preliminary injunction directed at the
MAYKA Toy Tape products whose packaging includes the
allegedly infringing packaging image.

## A. Likelihood of Success on the Merits

As with the ZURU Action Figures, the only dispute con-
cerning likelihood of success with respect to the MAYKA
Toy Tape Packaging Image ("Packaging Image") is whether
substantial similarities exist as to protectible material in
the LEGO and ZURU works. First, as with the ZURU Ac-
tion Figures, ZURU alleges that the district court's analy-
sis of LEGO's claim that the Packaging Image infringes
LEGO's Friends Copyrights improperly relied on refer-
ences to a LEGO product that is not the subject of a copy-
right registration. Second, according to ZURU, the district
court's conclusion that the Packaging Image is substan-
tially similar to the Figure with Skirt Copyright, VA 1-876-
378, provides an additional independent basis to find that

the district court's injunction directed to the Packaging Image is an abuse of discretion and should be reversed. In response to these arguments, LEGO asserts that, contrary to ZURU's allegations, the district court did compare the infringing product to the copyright as registered and found that the overall look and feel of the copyrighted Friends Figurine—with or without hair—is substantially similar to the Packaging Image. For the reasons discussed below, LEGO is correct.

ZURU is correct that Ms. Knight and the district court viewed LEGO's Friends Figurines. However, we need not address whether those figurines constitute unregistered derivative works, because Ms. Knight and the district court nevertheless relied on a comparison of the Friends Copyright images to the allegedly infringing Packaging Image. *See, e.g.*, J.A. 362, 1111, 1452–53; *LEGO*, 2019 WL 4643718, at *5 (relying on Ms. Knight's substantial similarity analysis). The district court then found that Ms. Knight gave a persuasive explanation as to why there are substantial similarities between the Friends Figurine and the allegedly infringing Packaging Image. *See id.* at *4–6. This included similarities in terms of scale and proportion, *i.e.*, the length of the leg, the shape of the leg, the proportions or size of the torso, and the head and the hair.[7] *Id.* at *5.

While ZURU provides a list of alleged differences between the LEGO Friends Copyrights and the Packaging Image based on their own expert's testimony, the district

---

[7]    ZURU points out that the LEGO Friends Copyright does not have hair. However, this does not undercut Ms. Knight's testimony, upon which the district court relied, that the similarities between the LEGO Friends Copyrights and the Packaging Image extended to scale and proportion, including the length of the leg, the shape of the leg, the proportions or size of the torso, and the head.

court found that these arguments deserve less weight than Ms. Knight's analysis in light of the fact that the standard for determining substantial similarity is whether an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal the same." *Id.* (citing *Yurman Design,* 262 F.3d at 111). For the reasons discussed above with respect to the ZURU Action Figures, we see no reason to upset the district court's finding on substantial similarity.

Accordingly, we affirm the district court's finding that LEGO is likely to succeed on the merits of its copyright infringement claim against the Packaging Image.

### B. Irreparable Harm

ZURU alleges that the district court abused its discretion in finding that LEGO would likely suffer irreparable harm because: (1) there is no evidence that the MAYKA Toy Tape is lacking in quality or in any way inferior to LEGO products; (2) the LEGO witness testimony and one customer comment on which the court relied was not directed to the MAYKA Toy Tape; and (3) LEGO does not sell a product similar to the MAYKA Toy Tape. We agree.

In its Order below, the district court found that LEGO would likely suffer irreparable harm absent a preliminary injunction on ZURU's MAYKA Toy Tape because of "lost goodwill and damaged reputation," and because ZURU would be able "to increase its sales and market share." *Id.* at *17. First, while LEGO argues in its reply brief that the district court did not abuse its discretion in finding that absent injunctive relief LEGO would lose goodwill and reputation, LEGO points to no evidence of record supporting this finding and admitted at oral argument, "there is no evidence in the record specifically that the tape product is inferior." Oral Arg. at 20:11–20:15, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-2122.mp3. Absent such a showing, LEGO has not, and cannot, show that its continuing sale will lead to lost goodwill and

damaged reputation. Second, it is undisputed that LEGO does not sell a product similar to the MAYKA Toy Tape. *Id.* at 20:42–20:44 ("It's not inferior to a LEGO product because we don't sell it."). Thus, LEGO cannot, nor has it tried to, show that ZURU's continuing sales of the MAYKA Toy Tape will lead to lost revenue or market share by LEGO.

Accordingly, we find that the district court abused its discretion in finding that LEGO would likely suffer irreparable harm absent a preliminary injunction directed to the MAYKA Toy Tape.

### C. Balance of the Hardships

As discussed above, in addition to showing a likelihood of success on the merits and irreparable harm, a party seeking a preliminary injunction must demonstrate that the balance of hardships favors the moving party. *Salinger*, 607 F.3d at 79–80. Here, ZURU alleges that the district court's balance of the hardships analysis on LEGO's claim that the Packaging Image infringes the Friends Copyrights suffers from the same errors as the balance of hardships analysis for LEGO's claims directed to the ZURU Action Figures and MAX Build More Bricks. For the reasons discussed above with respect to the ZURU Action Figures and Max Build More Bricks, the district court did not abuse its discretion in finding that ZURU's injuries result solely from its own deliberate acts of alleged infringement. Nevertheless, because we find that the district court incorrectly found that LEGO would be irreparably harmed absent an injunction directed to the MAYKA Toy Tape, ZURU's own inability to show harm does not prevent us from finding that LEGO, as the party seeking a preliminary injunction, failed to demonstrate that the balance of the hardships analysis favors them. *See id.*

Accordingly, we find that the district court abused its discretion in finding that the balance of the hardships with

respect to LEGO's claim of infringement of the Friends Copyrights favors LEGO.

*    *    *

For these reasons, we find that the district court abused its discretion and vacate its entrance of a preliminary injunction on the MAYKA Toy Tape products whose packaging includes the allegedly infringing Packaging Image.

## IV.  Bond

According to Federal Rule of Civil Procedure 65(c):

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c).  The Rule thus allows a preliminary injunction to become effective only upon the applicant's positing of an amount that the district court determines adequate.  *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004).  "Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm" to those enjoined.  *Id.* (internal citations omitted); *see also Doctor's Assocs., Inc. v. Stuart,* 85 F.3d 975, 985 (2d Cir. 1996).  The amount set for a preliminary injunction bond is reviewed for abuse of discretion. *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006) (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997)).

In this case, the district court determined that a $25,000 bond was appropriate.  According to ZURU, "the district court erred in setting the injunction bond at the nominal amount of $25,000," because it supposedly "does

LEGO A/S v. ZURU INC.

nothing to protect ZURU against the substantial and irreparable harm it is suffering and is dwarfed by ZURU's lost revenues." Appellant's Br. at 70. The party against whom a preliminary injunction is sought has the burden of establishing the amount of a bond necessary to secure against the wrongful issuance of the injunction. *See Stuart,* 85 F.3d at 985; *see also Covidien Sales LLC v. Ethicon Endo-Surgery, Inc.*, No. 314-cv-917JCH, 2014 WL 5420212, at *1 (D. Conn. Oct. 22, 2014) (internal quotations omitted); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.,* 441 F. Supp. 2d 552, 556 (S.D.N.Y. 2006) ("[T]he burden is on the party seeking security to establish a rational basis for the amount of the proposed bond."). ZURU failed to meet this burden.

In its Memorandum in Opposition to LEGO's Motion for Temporary Restraining Order and Motion for Preliminary Injunction, J.A. 592, ZURU did not suggest an appropriate amount for bond, instead stating only that "it is appropriate to require Plaintiffs to post a bond *in the amount to be determined at the hearing* as a prerequisite to issuance of an injunction." J.A. 667 (italics added). At the hearing, the district court did not determine, and ZURU did not suggest, an appropriate number for bond. *See generally* 1225, 1421. Instead, ZURU noted only that it had lost approximately $1.4 million to-date as a result of the district court's entrance of the TRO and speculated that it could lose anywhere between $8–12 million in 2019. After the hearing, ZURU again failed to provide any number for bond. Indeed, rather than attempt to establish the amount of a bond necessary to secure against a wrongful issuance of this injunction, ZURU argued in its Post-Hearing Brief in Opposition to LEGO's Motion for Preliminary Injunction, J.A. 1136, only that any preliminary injunction order must require a bond. *Id.* at 1178–79.

Where, as here, the non-moving party requested only that a bond be entered and failed to establish the amount of a bond necessary to secure against a wrongful issuance

of this injunction, we find that the district court did not abuse its discretion in setting bond at $25,000.

## CONCLUSION

We find that the district court did not abuse its discretion in entering a preliminary injunction with respect to the ZURU Action Figures for their alleged infringement of LEGO's Minifigure Copyrights. However, we find that the district court abused its discretion in entering preliminary injunctions with respect to the Max Build More Bricks and MAYKA Toy Tape after incorrectly determining, on the record before it, that LEGO would likely suffer irreparable harm. Accordingly, the order granting a preliminary injunction is

## AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

## COSTS

The parties shall bear their own costs.