### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------- x
LEGO A/S; LEGO SYSTEMS, Inc.;      :
and LEGO JURIS A/S,                :
                                   :
          Plaintiffs,              :   Civil No. 3:18-cv-2045(AWT)
                                   :
v.                                 :
                                   :
ZURU, INC.,                        :
                                   :
          Defendant.               :
------------------------------- x
```

### RULING ON MOTION TO DISMISS

Counterclaim-defendants LEGO A/S, LEGO Systems, Inc., and LEGO Juris A/S (the "LEGO Group") move to dismiss Counts I, II, and XV of counterclaimant ZURU, Inc.'s Answer and Counterclaims ("Counterclaim"), ECF No. 94, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the LEGO Group's motion is being granted.

### I.    FACTUAL ALLEGATIONS

The allegations of the Counterclaim, discussed in greater detail below in the context of evaluating each of ZURU, Inc.'s claims, are taken as true for purposes of this motion.

On July 22, 2019, ZURU, Inc. filed a 15-count Counterclaim, alleging, <u>inter alia</u>, that the LEGO Group has obtained monopoly power in the construction toy market by improperly procuring putative intellectual property rights directed to construction

toy products and by wrongfully asserting those rights against smaller construction toy companies, including ZURU, Inc. The LEGO Group moves to dismiss only Counts I, II, and XV of the Counterclaim.

Count I of the Counterclaim alleges that the LEGO Group fraudulently and inequitably obtained the following intellectual property rights through omissions and misrepresentations made to the United States Copyright Office (the "Copyright Office") and the United States Patent and Trademark Office (the "USPTO"):

- Copyrights registered with the Copyright Office, including Registration Number VA0000655230 and Registration Number VA0000655104 (collectively, the "Minifigure Copyrights") and Registration Numbers VA 1-876-291, VA 1-876-279, VA 1-876-378, and VA 1-876-373 (collectively, the "Friends Copyrights").

- Trademarks registered with the USPTO, including Registration Numbers 2,273,314, 2,273,321, and 2,922,658 (collectively, the "Stud Trademarks") and Registration Number 4,903,968 (the "Minifigure Trademark").

- Design patents registered with the USPTO, including the '923 patent, the '328 patent, the '053 patent, and/or the '707 patent (collectively, the "Asserted Design Patents").

Count I further alleges that the LEGO Group has knowingly and improperly asserted these intellectual property rights against ZURU, Inc. in the instant litigation, thereby violating Section 2 of the Sherman Act, 15 U.S.C. § 2.

Count II of the Counterclaim alleges that the LEGO Group has intentionally interfered with ZURU, Inc.'s business relationships with its customers by seeking to enforce its

invalid trademarks, copyrights, and patents against ZURU, Inc., with the resulting exclusion of certain ZURU, Inc. products from the United States' construction toy market.

Count XV of the Counterclaim alleges that, by carrying out these alleged acts, the LEGO Group has willfully and maliciously engaged in conduct offensive to public policy, governing statutes, common law principles, and established concepts of fairness, in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq.

## II.  LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 547. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice

may be taken." <u>Samuels v. Air Transport Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" <u>Goel v. Bunge, Ltd.</u>, 820 F.3d 554, 559 (2d Cir. 2016) (quoting <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002)).

## III. DISCUSSION

### A. <u>Count I: Violation of the Sherman Act</u>

With respect to this count, ZURU, Inc. alleges that the LEGO Group "has attempted to monopolize and maintain its monopoly power," in violation of § 2 of the Sherman Act, by improperly enforcing its fraudulently and inequitably obtained intellectual property rights against other competitors [and] by filing suits with knowledge that the underlying intellectual property rights are unenforceable under the circumstances." Countercl. ¶ 127. In support of this contention, ZURU, Inc. claims that the LEGO Group engaged in the "aggressive practice of filing for large numbers of intellectual property protections worldwide, including hundreds of publicly visible trademark applications, copyrights, and patents in the United States alone," and continues to "assert its fraudulently obtained

intellectual property against ZURU, Inc. with the resulting
exclusion of ZURU's products from the United States'
construction toy market." Id. The Lego Group moves to dismiss
Count I on three grounds: (1) failure to allege a relevant
market, (2) failure to allege an antitrust injury, and (3)
failure to plead fraud with particularity as required by Federal
Rule of Civil Procedure 9(b). Its arguments as to the first two
grounds are unavailing but the court agrees that Count I should
be dismissed for failure to plead fraudulent intent.

### 1.  Failure to Allege a Relevant Market

In assessing a monopolization claim under § 2 of the
Sherman Act, "courts have found it necessary to consider the
relevant market and the defendant's ability to lessen or destroy
competition in that market." Spectrum Sports, Inc. v. McQuillan,
506 U.S. 447, 456 (1993); see also Walker Process Equip., Inc.
v. Food  Mach. & Chem. Corp., 382 U.S. 172, 177 (1965) ("To
establish monopolization or attempt to monopolize a part of
trade or commerce under § 2 of the Sherman Act, it [is]
necessary to appraise the exclusionary power of the illegal
patent claim in terms of the relevant market for the product
involved."). "Without a definition of that market there is no
way to measure [the defendant's] ability to lessen or destroy
competition." Walker Process, 382 U.S. at 177. "Thus, the
relevant market is defined as the area of effective

competition." Ohio v. Am. Express Co., 138 S.Ct. 2274, 2285 (2018) (internal citations and quotations omitted). "That market is composed of products that have reasonable interchangeability for the purposes for which they are produced -- price, use and qualities considered," AD/SAT, Div. of Skylight, Inc. v. Assoc. Press, 181 F.3d 216, 227 (2d. Cir. 1999) (quoting U.S. v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 404 (1956)), and "correspond[s] to the commercial realities of the industry." Brown Shoe Co. v. U.S., 370 U.S. 294, 336-37 (1962).

The claimant has the burden of defining the relevant market. See e.g., Queen City Pizza Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997); N. Am. Energy Sys., LLC v. New Eng. Energy Mgmt., 269 F.Supp.2d 12, 16 (D. Conn. 2002); Hack v. Yale President & Fellows of Yale College, 15 F.Supp.2d 183 (D. Conn. 1998). To survive a Rule 12(b)(6) motion, the claimant must allege a product market that "bear[s] a rational relation to the methodology courts prescribe to define a market for antitrust purposes —- analysis of the interchangeability of use or the cross-elasticity of demand, and it must be plausible." Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 237 (2d Cir. 2008) (citing Todd v. Exxon Corp., 275 F. 3d 191, 200 (2d Cir. 2001)). "Where the [claimant] fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass

all interchangeable substitute products even when all factual inferences are granted in [the claimant's] favor, the relevant market is legally insufficient and a motion to dismiss may be granted." Queen City Pizza, Inc., 124 F.3d at 436.

Nevertheless, "[b]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." Todd, 275 F. 3d 199-200; see also Eastman Kodak Co. v. Image Tech. Servs., Inc., 505 U.S. 451, 482 (1992) (holding that "the proper market definition . . . can be determined only after a factual inquiry into the commercial realities faced by consumers"); Envirosource, Inc. v. Horsehead Res. Dev. Co., 95 Civ. 5106, 1997 U.S. Dist. LEXIS 12570, *8 (S.D.N.Y. Aug. 21, 1997) (holding that "[e]xtensive analyses of reasonable interchangeability and cross-elasticity of demand . . . are not required at the pleading stage. . . . Market definition . . . is generally ultimately a question of fact which can be determined only after a factual inquiry into the commercial realities faced by consumers.") (internal citations and quotations omitted). "There is, however, no absolute rule against the dismissal of antitrust claims for failure to allege a relevant product market." Id. at 200. Courts have found dismissal to be appropriate where "no plausible explanation for the alleged market" is given, Creative Copier Servs. v. Xerox Corp., 344 F. Supp. 2d 858, 863 (D. Conn. 2004)), where the complaint provided

"no allegations regarding substitute products," <u>Subsols., Inc. v.</u>
<u>Doctor's Assos., Inc.</u>, 62 F.Supp.2d 616, 625 (D. Conn. 1999), and
where the complaint failed to "include any facts regarding cross-
elasticity of demand." <u>Id.</u>

In Count I, ZURU, Inc. alleges that the relevant product and
geographic market is the market for "construction toys" in "the
United States."[1] Countercl. ¶ 122. ZURU, Inc. defines construction
toys as "collections of individual pieces with interlocking
features that can be connected or taken apart in a number of ways."
<u>Id.</u> The LEGO Group argues that this definition of the market
"makes no rational or economic sense," as the relevant market
should be "much broader" because "toys of various types are sold
together by retailers and can be used interchangeably to achieve
the same end: children's play." Mem. 6-8.

As discussed above, "the outer boundaries of a product market
are determined by the reasonable interchangeability of use or the
cross-elasticity of demand between the product itself and
substitutes for it." <u>Brown Shoe</u>, 370 U.S. at 325. Count I alleges
that "[c]onstruction toys are not reasonably interchangeable with
other types of toys" and that "[m]ajor retailers and their
customers would not substitute other types of toys in response to

---

[1] As noted by ZURU, Inc. in its opposition, the LEGO Group "does
not dispute that the relevant geographic market is the United
States." Opp'n 5.

an increase in the price of construction toys." Countercl. ¶ 123. In light of these allegations, the court finds unpersuasive the LEGO Group's contention that ZURU, Inc.'s definition of construction toys is nebulous because, under that definition, the relevant product market includes products as distinct as wooden puzzles and foam play mats. Drawing inferences in a light most favorable to ZURU, Inc., these factual allegations are sufficient for purposes of a motion to dismiss to define a market that is a subset of the larger United States market for toys generally.

### 2. Failure to Allege an Antitrust Injury

To support a claim for monopolization under § 2 of the Sherman Act, a claimant must also plead an antitrust injury, i.e., an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990). "The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). "It should, in short, be the type of loss that the claimed violations . . . would be likely to cause." Id.

The court agrees with ZURU, Inc. that Count I alleges facts sufficient to plead an antitrust injury. Count I claims:

> Through LEGO's efforts to use invalid or unenforceable
> intellectual property rights to halt competition and
> wrongfully stifle ZURU's entry, and growth and sales
> in the U.S. construction toy market, LEGO is
> attempting to strengthen and improperly maintain its
> monopoly status, causing antitrust injury to ZURU,
> other U.S. construction toy competitors, retailers,
> and consumers alike. . . .
>
> LEGO's actions have caused further competitive injury
> to ZURU by excluding ZURU's high quality, lower cost,
> innovative competing products from the market,
> resulting in lost past and future sales, as well as
> lost retail shelf space. ZURU has suffered other
> injury to its business and property . . . [including]
> the cost of defending infringement litigation,
> precluded entry, and premature exit from the U.S.
> construction toy market.
>
> LEGO's actions have also caused harm to competition
> and consumers by . . . forcing consumers to purchase
> LEGO products at supracompetitive prices.

Countercl. ¶¶ 133-36. Intellectual property protections

inherently confer the power to exclude others from the use of

intellectual property. Thus, it is plausible that attempts to

enforce fraudulently obtained intellectual property rights would

result in the exclusion of products and competitors from the

market, particularly through threats or prosecution of

infringement suits, and also result in supracompetitive pricing.

These injuries are quintessential injuries that the antitrust

laws are intended to prevent. See e.g., Meijer, Inc. v. Ferring

B.V., 585 F.3d 677 (2d Cir. 2009).

### 3. Failure to Allege Fraud with Particularity

Claims based on the enforcement of fraudulently obtained intellectual property rights, so-called <u>Walker Process</u> claims, may be the basis for an action under § 2 of the Sherman Act. <u>See Walker Process</u>, 382 U.S. at 174. Such claims are, as here, "typically brought as counterclaims in patent infringement suits" where "the plaintiff claims the defendant infringed his patent, and the defendant responds that the patent was invalid as fraudulently obtained, and that the plaintiff's enforcement efforts violate <u>Walker Process</u>." <u>Meijer</u>, 585 F.3d at 689-90. In order to prevail on a <u>Walker Process</u> claim, the claimant must show, "first, that the anti-trust defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement; and second, all the other elements necessary to establish a Sherman Act monopolization claim." <u>TransWeb, LLC v. 3M Innovative Props. Co.</u>, 812 F.3d 1295, 1306 (Fed. Cir. 2016). The other elements necessary to establish a Sherman Act monopolization claim are "(1) that the [antitrust] defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." <u>Spectrum Sports</u>, 506 U.S. at 456. Courts have applied this analysis to intellectual property rights beyond the patent context. <u>See e.g.</u>, <u>Michael Anthony</u>

_Jewelers, Inc. v. Peacock Jewelry, Inc._, 795 F. Supp. 639, (S.D.N.Y. 1992) (holding that "'fraudulent procurement of a copyright by means of knowing and willful misrepresentations to the Copyright Office may strip a copyright holder of its exemption from the antitrust laws,' as long as the other aspects of a monopolization or attempted monopolization claim are present.") (citing _Knickerbocker Toy Co., Inc. v. Winterbrook Corp._, 554 F. Supp. 1309, 1321 (D.N.H. 1982)); _Southern Snow Mfg. Co. v. SnoWizard Holdings, Inc._, No. 06-9170, 2013 U.S. Dist. LEXIS 22157 (E.D.L. 2013) (holding that "the attempted enforcement of a trademark registration may constitute an antitrust violation if [the claimants] establish the other elements of an antitrust violation under Section 2 of the Sherman Act").

To adequately plead that an antitrust defendant obtained its intellectual property rights by knowing and willful fraud, a claimant must allege facts sufficient to establish:

> (1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation."

_Meijer_, 585 F.3d at 692 (citing _Nobelpharma AB v. Implant Innovations, Inc._, 141 F.3d 1059, 1069-70 (Fed. Cir. 1998));

see also Walker Process, 382 U.S. at 177 (holding that in order "to strip [a patentee] of its exemption from the antitrust laws," an antitrust claimant is required to prove that the patentee "obtained the patent by knowingly and willfully misrepresenting facts to the [USPTO]."). "A fraudulent omission, which can be just as reprehensible as a fraudulent misrepresentation, can be sufficient to support a finding of Walker Process fraud." Meijer, 585 F.3d at 692.

Moreover, a claimant "alleging fraud . . . must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Because claims of inequitable conduct sound in fraud," a claimant alleging inequitable conduct must also "satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b)." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326 (Fed. Cir. 2009). Thus, a claimant alleging fraud and/or inequitable conduct, as here, must identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [USPTO]." Id. at 1327.

Federal Rule of Civil Procedure 9(b) provides that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." But this "relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." Shields v. Citytrust Bancorp., 25 F.3d 1124, 1128

(2d Cir. 1994). A claimant must allege facts "that give rise to a strong inference of fraudulent intent." Id. The claimant must include "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind," i.e., that the party "(1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the [USPTO]." Exergen Corp., 575 F.3d at 1328-29.

As noted above, Count I alleges that the LEGO Group "fraudulently and inequitably obtained patent, trademark and copyright protections, including through material misrepresentations and/or fraudulent nondisclosures to the [USPTO], and then knowingly and improperly asserted such invalid and/or unenforceable intellectual property rights against ZURU Inc." in the instant litigation. Countercl. ¶ 128. It further alleges that the LEGO Group "knew or should have known that its intellectual property rights were invalid and/or unenforceable against ZURU under these circumstances," and that the current litigation was therefore undertaken "in bad faith" and constitutes "an impermissible exclusionary act in violation of the antitrust laws." Id.

### a. Trademarks

With respect to the Stud Trademarks, Count I alleges:

LEGO inequitably withheld material information regarding the stud functional elements. Instead, LEGO led the USPTO to believe that LEGO was not seeking protection for the cylindrical stud functional element, but was seeking protection only for its use as an element of product packaging –contrary to its assertion against ZURU. When the USPTO refused the Stud Trademarks for functionality, LEGO claimed that the objection 'may be based on a slight mis-understanding as to the nature of the specimen' in that the 'cylindrical surface features on the lid in the specimen have no functional purpose whatsoever.' However, studs on lids are functional, including in the sense that they inform the consumer of the product inside. The USPTO relied on the erroneous information provided by LEGO in assessing the validity of the trademarks. LEGO knew that the trademarks were fraudulently obtained and maintained because LEGO knew that it could not legitimately assert trademark rights in an essential functional cylindrical stud element. Absent the fraud, the LEGO trademarks would not have been granted[.]

Countercl. ¶ 129. With respect to the Minifigure Trademark,

Count I alleges:

In order to obtain the LEGO Minifigure Trademark, LEGO withheld material information regarding the functional elements, including studs and hands. As discussed above, LEGO inequitably withheld material information from the USPTO in the prosecution of its Minifigure Trademark, including that it had claimed functional stud elements in its '733 Patent, and had admitted functionality of stud on top of the head, the hand grips, as well as the torso, legs, and the feet in its '327 Trademark application. The USPTO relied on the erroneous and incomplete information provided by LEGO in assessing the validity of the trademarks. LEGO knew that the trademark registrations (as well as its copyright registrations in its figurines) were fraudulently obtained and maintained because LEGO and its counsel knew that LEGO could not legitimately assert exclusive rights in essentially functional elements. Absent the fraud, the LEGO trademarks would not have been granted[.]

<u>Id.</u> at ¶ 130.

The court agrees with the LEGO Group that these factual allegations are insufficient to plead fraudulent intent. To adequately plead a <u>Walker Process</u> claim, the claimant must allege facts that show, <u>inter alia</u>, that the antitrust defendant made a representation of a material fact and that representation was false. <u>See</u> <u>Meijer</u>, 585 F.3d at 692. Although Count I asserts, with respect to both the Stud Trademarks and the Minifigure Trademark, that material information was withheld, ZURU, Inc. fails to allege facts that could establish materiality.

"The fact that a product contains some functional elements," which is all that Count I alleges with respect to both the Stud Trademarks and the Minifigure Trademark, "does not . . . preclude Lanham Act protection." <u>I.P. Lund Trading Aps. & Kroin v. Kohler Co.</u>, 163 F.3d 27, 37 (1st Cir. 1998). Under the Lanham Act, "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration . . . on account of its nature unless it . . . comprises any matter, that as a whole, is functional." 15 U.S.C. 1052(e)(5). "[T]he critical functionality inquiry is not whether each individual component of the trade dress is functional, but rather whether the trade dress as a whole is functional." <u>Tools USA v. Equip. Co. v. Champ Frame Straightening Equip. Inc.</u>, 87

F.3d 654, 658 (4th Cir. 1996). Accordingly, "'a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection." I.P. Lund Trading, 163 F.3d at 37 (citing Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113, 119 (5th Cir. 1991), aff'd, 505 U.S. 763 (1992). See also LeSportsac, Inc. v. K Mart Corp., 754 F.2d 71, 76 (2d Cir. 1985) ("[B]y breaking . . . trade dress into its individual elements and then attacking certain of those elements as functional, [the claimant] misconceives the scope of the appropriate inquiry.").

Count I alleges that the LEGO Group withheld, with respect to the Stud Trademarks, information regarding "stud functional elements," and, with respect to the Minifigure Trademark, information regarding "functional elements, including studs and hands." Countercl. ¶¶ 129-30. But Count I does not allege with respect to either product that the trade dress as a whole is functional, which is what is required to make the trade dress ineligible for protection. As in LeSportsac, the claimant here misconstrues the scope of the appropriate inquiry. Information pertaining solely to individual elements is not material.[2] Count

---

[2] Because the court finds that Count I fails to establish the materiality of the alleged omissions, it need not address the question of whether ZURU, Inc. adequately pled that the LEGO Group admitted the functionality of the particular elements in its patent and trademark applications. See id. at ¶¶ 31, 34, 130.

I also alleges that the LEGO Group knew it could not assert trademark rights in "an essential functional cylindrical stud element" and "essentially functional elements," id., but it is apparent that there is no legal basis for these allegations.

Nor has ZURU, Inc. alleged facts that could show that the LEGO Group engaged in inequitable conduct by failing to disclose any contradictory positions it or the USPTO has previously taken with respect to allegedly functional elements. In Bart Schwartz International Textiles, Ltd. v. FTC, 289 F.2d 665, 669 (C.C.P.A. 1961), the court explained:

> Any duty owed by an applicant for trademark registration must arise out of the statutory requirements of the Lanham Act, particularly those found in Section 1(a)(1). This section requires merely that an applicant for registration verify a statement that 'no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive.'
>
> The obligation which the Lanham Act imposes on an applicant is that he will not make knowingly inaccurate or knowingly misleading statements in the verified declaration forming a part of the application for registration.
>
> The mere withholding of information . . . is not such a fraudulent withholding of information as to warrant cancellation of the mark.

Id. Thus, to the extent that ZURU, Inc.'s claims of inequitable conduct are premised on the LEGO Group's failure to disclose the alleged functionality of elements of the trade dress, it fails

to state a claim upon which relief can be granted under this theory too.

### b. Copyrights

Count I alleges that the LEGO Group committed fraud on the Copyright Office in the course of procuring its Minifigure Copyrights and Friends Copyrights. ZURU, Inc. claims that these copyrights were fraudulently obtained for three reasons. First, it alleges that the LEGO Group "characterized" the Minifigure figurines and the Friends figurines "as sculptures (non-functional works of art), which may have led the Copyright Office to analyze them under a different standard from construction toys with many functional elements." Countercl. ¶¶ 60, 75. According to ZURU, Inc., "[i]f these copyright applications had been properly characterized as construction toys rather than as works of art, many functional aspects of the toys may not have been accepted by the Copyright Office as copyrightable, whether LEGO intended this outcome or not." Id. As a result, these "[c]opyrights . . . may therefore be invalid." Id.

Count I does not allege factual content that allows the court to draw a reasonable inference that the LEGO Group engaged in fraud by characterizing its figurines as "sculptures." The

LEGO Group's Certificates of Registration[3] expressly denote the nature of the products as "toy sculpture[s]," not simply "sculptures," and the deposit materials show the toy sculptures in the context in which they are to be used -- including a reference in packaging to "From 6 years." Thus, the court agrees with the LEGO Group that "[i]t is not plausible to allege the LEGO Group hid that the copyrights covered toys when it used the term 'toy' on the application and the deposit materials make clear that the product is a toy--even shown in use." Mem. 9. Even when drawing inferences in the light most favorable to the nonmoving party, the allegation that the LEGO Group mischaracterized its products as "sculptures (non-functional works of art)" to obscure the fact that the products were and should be analyzed as "toys" is itself a mischaracterization.

Second, ZURU, Inc. alleges that the LEGO Group failed to disclose several functional aspects of its Minifigure figurines and Friends figurines to the Copyright Office and that, if the

---

[3] As noted above, the court may consider "matters of which judicial notice may be taken" in its review of a motion to dismiss for failure to state a claim. Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). A district court is "entitled to take judicial notice of . . . federal copyright registrations, as published in the Copyright Office's registry." Island Software and Comput. Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005). Accordingly, the court takes judicial notice of the LEGO Group's federal copyright registrations, docketed here as ECF No. 98-3, and considers them in its assessment of the sufficiency of Count I.

functionality had been disclosed, that may have resulted in the
Copyright Office's rejection of the copyright applications in
question. See Countercl. ¶¶ 60, 75. The Counterclaim alleges:

> Many of the aspects of the LEGO Minifigure figurines
> are functional, and are therefore not proper material
> for copyright . . . protection. LEGO's failure to
> disclose this functionality to the . . . Copyright
> Office[] is grounds for full or partial invalidation
> of the copyrights[.] LEGO failed to inform the USPTO
> of previous inconsistent positions taken by LEGO . . .
> in relation to functionality and characteristics of
> its Minifigures. LEGO instead told the USPTO what was
> necessary in each instance to obtain the desired
> protection at the time, regardless of contradictions
> or inconsistencies as compared with its previous
> filings.

Id. at ¶¶ 61-62. See also id. at ¶ 76. The court agrees with the
LEGO Group that these factual allegations are insufficient to
establish an intent to commit fraud on the Copyright Office.

As discussed above with respect to the Stud Trademarks and
Minifigure Trademark, a claimant pursing a Walker Process claim
must allege facts that establish the materiality of the alleged
omission or misrepresentation. See Meijer, 585 F.3d at 692.
Count I fails to allege facts that establish the requisite
materiality because the "mere fact that some elements [of a
product] are functional," which is all that Count I alleges with
respect to the Minifigure Copyrights and the Friends Copyrights,
"does not render the entire sculptural work uncopyrightable."
LEGO A/S v. Best-Lock Constr. Toys, Inc., 404 F.Supp.3d 583, 603
(D. Conn. 2019); see also Kurt S. Adler, Inc. v. World Bazaars,

897 F.Supp. 92, 95-96 (S.D.N.Y. 1995) (finding defendant had
infringed plaintiff's valid copyright, despite functional
aspects of the protected work); Klauber Bros., Inc. v. Target
Corp., No. 14 Civ. 2125, 2015 WL 4393091, *5 (S.D.N.Y. July 16,
2015) (rejecting defendants' argument that plaintiff's copyright
was unenforceable because plaintiff failed to disclose to the
Copyright Office, inter alia, that the scalloped edges of a
copyrighted design were "functional" because this fact did not
establish that the scallop patterns were wholly unprotectable).
Because the factual allegations in Count I merely establish that
the Minifigure figurines and Friends figurines have functional
aspects, as opposed to the entire work being unprotectable, the
information alleged to have been withheld is not material.

Nor does the Counterclaim allege that the copyright
application sought information the LEGO Group failed to
disclose. The allegations in Count I merely show an intent to
disclose only the information that was necessary to deliver a
complete copyright application. A failure to disclose
information, without more, is insufficient to show an intent to
deceive.

Third, ZURU, Inc. alleges that the LEGO Group "failed to
disclose that other government agencies and courts had taken
positions contradictory to those asserted by LEGO" in their
applications. Countercl. ¶ 62. According to ZURU, Inc., this is

"grounds for full or partial invalidation of the copyrights."

Id. However, as discussed above, allegations such as this

concerning a mere failure to disclose, without more, are

insufficient to plead an intent to deceive.

### c. Patents

With respect to the LEGO Group's procurement of the

Asserted Design Patents[4], Count I alleges that:

> LEGO knowingly and intentionally concealed evidence of
> its own prior sales of similar or identical products
> more than one year before the applications. LEGO knew
> of its prior sales yet inequitably and intentionally
> concealed that information from the USPTO. Absent this
> concealment, LEGO's design patents would not have been
> granted.

Countercl. ¶ 131; see also id. at ¶¶ 109, 112, 115. The court

agrees with the LEGO Group that these factual allegations, taken

as true for purposes of the instant motion, are insufficient to

establish fraud or inequitable conduct. Stripped of its

conclusory allegations, the counterclaim states that the LEGO

Group failed to disclose products previously sold by it in the

applications it submitted to the USPTO. However, "a mere failure

to cite [a piece of prior art] to the [USPTO] will not suffice"

to support a finding of fraud. Nobelpharma, 141 F.3d at 1071.

"[F]or an omission such as a failure to cite a piece of prior

---

[4] As noted by the LEGO Group, ZURU, Inc. has not pled that the
'053 Patent was fraudulently obtained. See Mem 16. Therefore,
ZURU, Inc.'s claim as to the '053 Patent is dismissed for
failure to state a claim for this reason.

art to support a finding of Walker Process fraud, the
withholding of the reference must show evidence of fraudulent
intent." Id.; see also In re DDAVP Direct Purchaser Antitrust
Litig., 585 F.3d 677, 693 (2d Cir. 2009) ("While a false or
clearly misleading statement can permit an inference of
deceptive intent, a misrepresentation in the form of an omission
is more likely to be innocent and cannot support Walker Process
fraud without 'evidence of intent separable from the simple fact
of the omission.'" (quoting Dippin' Dots, Inc. v. Mosey, 476
F.3d 1337, 1347 (Fed. Cir. 2007)). The counterclaim includes no
factual allegations separable from the simple fact of the
omission that could support a reasonable inference of fraudulent
intent on the part of the LEGO Group. Thus, the counterclaim is
being dismissed with respect to the Asserted Design Patents for
failure to state a claim.[5]

---

[5] ZURU, Inc. argues that the "facts regarding LEGO's subjective
intent in relation to its Design Patent applications are
entirely within LEGO's possession, not ZURU's." Opp'n 15. It
contends that its "allegations regarding LEGO's subjective
intent, properly made 'upon information and belief,' are
sufficient[.]" Id. "Where pleading is permitted on information
and belief, a complaint must adduce specific facts supporting a
strong inference of fraud or it will not satisfy even a relaxed
pleading standard.". Wexner v. First Manhattan Co., 902 F.2d
169, 172 (2d Cir. 1990). However, Count I includes no specific
facts that would support a strong inference of fraudulent
conduct on the part of the LEGO Group in obtaining its patents.

### B. Count II: Intentional Interference with Prospective Economic Advantage

With respect to this count, ZURU, Inc. alleges:

ZURU Inc. has entered into economic relationships with at least one U.S. retail customer, whereby that customer placed orders for ZURU's products [and wishes] to market those products to customers. . . .

LEGO is aware of the existence of ZURU Inc.'s customer relationships, and is aware ZURU seeks to deliver construction toy products to its customers. LEGO engaged in wrongful conduct designed to interfere with these relationships, without justification, by seeking to enforce invalid trademarks, copyrights, and patents with the intent of stopping ZURU from selling its products to customers and monopolizing the U.S. market for construction toys, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

LEGO's actions have damaged the relationships between ZURU and its customers, by interfering with ZURU's ability to fulfill orders from those customers.

ZURU has been harmed by LEGO's intentional interference with ZURU's business relationships with its customers.

Id. at ¶¶ 138-41.

Claims for "[intentional] interference with another's business practices and opportunities has long been recognized in Connecticut." Am. Diamond Exch., Inc. v. Alpert, 101 Conn. App. 83, 89 (2007). To prove intentional interference, a claimant must show "(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers

actual loss.'" <u>Hi-Ho Tower, Inc. v. Com-Tronics, Inc.</u>, 255 Conn.
20, 27 (2000).

The court agrees with the LEGO Group that ZURU, Inc.'s
claim of intentional interference is predicated solely on the
alleged antitrust harm pled in Count I and consequently fails to
state a claim upon which relief can be granted. ZURU, Inc.
contends that the LEGO Group reads "Count II too narrowly"
because "LEGO's tortious interference is separate and apart from
LEGO's broader campaign to monopolize the construction toy
market in violation of the Sherman Act." Opp'n 21, 23. However,
the factual assertions that ZURU, Inc. relies on in its
opposition to support this contention are not alleged in the
Counterclaim, and thus not properly considered by the court in
connection with the instant motion. <u>See e.g.</u>, <u>Teracciano v.
McGarrity</u>, 16 Civ. 1324 (LAP), 2017 U.S. Dist. LEXIS 79722, *8
(S.D.N.Y. May 24, 2017); <u>Branch v. Tower Air, Inc.</u>, 94 Civ. 6625
(JFK), 1995 U.S. Dist. LEXIS 16390, *5 (S.D.N.Y. Nov. 3, 1995)
(stating that "memoranda and supporting affidavits in opposition
to a motion to dismiss cannot be used to cure a defective
complaint."). Consequently, the only factual allegations as to
intent to engage in wrongful conduct are any incorporated by
reference to the LEGO Group acting in violation of Section 2 of
the Sherman Act. As discussed above, ZURU, Inc. has failed to
plead facts sufficient to state a claim under 15 U.S.C. § 2.

### C. Count XV: Violation of the Connecticut Unfair Trade Practices Act (CUTPA)

With respect to this count, ZURU Inc. alleges:

> By engaging in the acts alleged above, including by monopolizing the U.S. market for construction toys, LEGO has willfully and maliciously engaged in conduct offense to public policy, governing statutes, including Section 2 of the Sherman Act, 15 U.S.C. § 2, common law principles, and established concepts of fairness. . . .
>
> LEGO's conduct has caused and will continue to cause substantial injury to ZURU and to consumers. . . .
>
> ZURU has suffered an ascertainable loss of money or property as a result of LEGO's actions.

Countercl. ¶¶ 227-31.

In assessing whether a practice violates CUTPA, Connecticut courts will consider "(1) whether the practice . . . offends public policy as it has been established by statutes, the common law, or otherwise," "(2) whether it is immoral, unethical, oppressive, or unscrupulous," and (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Gaynor v. Hi-Tech Homes, 149 Conn. App. 267, 275 (2014). As noted by ZURU, Inc., "violations of either the Sherman Act or the Clayton Act can support a claim of unfair competition under CUTPA," Subsols., Inc. v. Doctor's Assocs., Inc., 62 F.Supp.2d 616, 629 (D. Conn. 1999), as can claims of tortious interference, Landmark Inv. Group, LLC v. CALCO Constr. and Dev. Co., 318 Conn. 847, 881 (2015).

The court agrees with ZURU Inc. that this count is predicated on both the antitrust claim set forth in Count I and the tortious interference claim set forth in Count II. However, because neither of those counts states a claim upon which relief can be granted, Count XV must also be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Counts I, II, and XV of ZURU, Inc.'s Answer and Counterclaims (ECF No. 94) are hereby DISMISSED.

It is so ordered.

Dated this 22nd day of April 2020, at Hartford, Connecticut.

/s/ AWT_____

Alvin W. Thompson
United States District Judge
