UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEGO A/S, LEGO SYSTEMS, Inc., and LEGO Juris A/S, <br><br> Plaintiffs, <br><br> v. <br><br> Zuru Inc., <br><br> Defendant. | Civil Action No. 3:18-CV-2045 (AWT) <br><br> May 6, 2022 |

### *REDACTED* DEFENDANT'S LOCAL RULE 56(a)2 RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

Defendant Zuru Inc. ("Zuru"), pursuant to D. Conn. Loc. Rule 56(a)2, hereby submits its response to Plaintiffs Lego A/S, Lego Systems, Inc., and Lego Juris A/S's ("Lego's"), statement of additional material facts.

1. The LEGO Group was granted a U.S. Design Patent for the Minifigure figurine, No. D253711. Pls' Ex. 49.

**RESPONSE:** Admitted, but fails to create a genuine dispute of material fact. While Zuru admits that Interlego AG was assigned U.S. Design Patent No. D253711, design patents do not preclude a finding of functionality. *Ga.-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 729 (7th Cir. 2011) ("And in contrast to utility patents (which establish functionality), 'design patents do not preclude a finding of functionality.'"); *Telebrands Corp. v. Del Laboratories, Inc.*, 814 F. Supp. 2d 286, 295 (S.D.N.Y. 2011).

2. The LEGO grid system allows for infinite variations of sizes and scale of figurines and models. Ex. 33, Ex. B at 28-31, ¶¶ 58-62; *id.* at 34-40, ¶¶ 68-69. *See also* Pls' Ex. 39 at 200

("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"); *id.* at 274 ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"); Pls' Ex. 36 at 102.

**RESPONSE:** Denied.  This purported fact is not supported by the cited evidence, and is contrary to undisputed evidence, including Lego's own admissions, and contrary to law.  Even the testimony from its own witness that Lego cites to support this purported fact actually contradicts it.  (ECF No. 263, Lego ASOF, Pls' Ex. 36 at 102:17-25 [Lego's own expert testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓].)  Indeed, far from recognizing that a figurine of "any size" works just as well with the Lego grid system as the minifigure, Lego has admitted that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓."  (ECF No. 236, Zuru SOF 7; *see also* ECF No. 236, Zuru SOF, Def's Ex. 14, Johansen Dep. Ex. 180 at 3 (recognizing that Lego needed to add to its play system a figurine (which resulted in the minifigure) that was "more on a scale with the LEGO brick" and that was "as broadly generic as possible" so it would fit "perfectly"); ECF No. 236, Zuru SOF at ¶¶ 6-13, 23-32, 32 (citing evidence); ECF No. 267, Zuru RSOF at ¶¶ 42, 58 (citing evidence).)  Lego also recognized while designing the "Friends" figurine that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓."  (ECF No. 236, Zuru SOF 32.)  Moreover, Lego's purported fact is contrary to Judge Haight's ruling in the *Best Lock* case (based on Lego's Kre-O and Mega Bloks admissions) that the minifigure's size, dimensions, and proportions are "functional" because all Lego-compatible figurines "must have these elements so that they can be used in combination with blocks and base plates." *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 874 F. Supp. 2d 75, 102 (D. Conn. 2012).  Indeed, because changing the size or shape of the minifigure impacts its ability to attach to other elements and scale with existing models (and using larger sizes

costs more), there cannot be infinite variations of sizes and scales. (ECF No. 236, Zuru SOF, Def's Ex. 7 [Ex. A Loetz Expert Report] at ¶¶ 27, 31-42, 48-103, 109-115; ECF No. 269-23, Def's Ex. 75 [Loetz Rebuttal Report] at ¶¶ 50-53, 58-61, 64-70, 73-89).)

3.  There are many ways to potentially change the Minifigure figurine without impacting its ability to move or attach to other elements. Pls' Ex. 39 at 233:16-23 ("█████████████████████████████████████████████████████████"); *see also* Pls' Ex. 33, Ex. B at 43, ¶ 78.

**RESPONSE:** Zuru denies this purported fact because it is vague, unsupported by the cited evidence, and contrary to the evidence in this case. To the extent Lego is purporting to show there are alternative designs for the minifigure that match its functionality and compatibility with the Lego play system, this is denied. There is no evidence in this case, including none of the evidence cited by Lego, showing there is any alternative design for a minifigure that works "equally well" as the minifigure, including with respect to its functionality and compatibility with the Lego play system. It is undisputed that none of the alternatively designed figurines that Lego has proffered in this case matches the functionality of the minifigure. (ECF No. 236, Zuru SOF 24.) Lego's own corporate designee, Mr. Johansen, testified that █████████████████████████████████████████████████. (ECF No. 236, Zuru SOF, Def's Ex. 43 [Knight Vol. I at 232:21-25]; ECF No. 263, Lego SOF, Pls' Ex. 39 [Knight Vol. 1 at 233:1-23]; ECF No. 236, Zuru SOF 24.) And as a matter of law, Lego's speculation about what is "possible" or "potential" is irrelevant to demonstrating the non-functionality of the minifigure trade dress, as Zuru has showed. (ECF No. 236, Zuru SJ Mtn. 41-44.) Zuru also incorporates by reference its response to Lego's ASOF No. 2 contained herein.

4.  The boxes containing LEGO sets in 1978 were intended for permanent storage. *See* Pls' Ex. 33, Ex. A at 55 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); Pls' Ex. 37 at 340:11–341:21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Def's Ex. 39 at 245:19–246:9.

**RESPONSE:** Denied.  First, Ms. Knight did not testify that the cardboard boxes containing minifigures in 1978 were intended for *permanent* storage.  Rather, Ms. Knight testified that the cardboard packaging "▮▮▮▮▮▮▮▮▮▮▮" (Def's Ex. 105 [Knight Tr. Vol. 2 at 340:11-19]).  Ms. Knight, however, also admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Def's Ex. 105 [Knight Tr. Vol. 2 at 338:7-23]).  Second, Ms. Knight admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (ECF No. 236, Zuru SOF, Def's Ex. 44 [Knight Vol. 2 at 339:24-340:10]).  Third, Lego's own witnesses testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (ECF No. 236, Zuru SOF, Ex. 39 [Carr Tr. Vol. 1 at 443:11-445:2, 461:12-463:16]; ECF No. 236, Zuru SOF, Def's Ex. 24 [Dep. Ex. 202 (compilation of images of product packaging (or remnants thereof) for minifigures Lego sold in 1978) at 22-61 (re product nos. 590 through 1620)].)  Fourth, the packaging is not part of the product, and consumers can store their minifigures wherever they like and still play with the product without the box. (ECF No. 236, Zuru SOF, Def's Ex. 44 [Knight Tr. Vol. 2 at 384:19-387:8]; ECF No. 236, Zuru SOF, Def's Ex. 41 [Johansen Tr. Vol. 1 at 229:5-14]; ECF No. 236,

Zuru SOF, Def's Ex. 39 [Carr Tr. Vol. 1 at 437:18-438:16, 450:2-22, 456:25-457:17, 462:15-463:24]; ECF No. 239-33, Def's Ex. 32 [Dep. Ex. 214 (Lego website) ("Lego boxes and other packaging are often disposed of quickly"); ECF No. 239-34, Def's Ex. 33 [Dep. Ex. 215 (Lego website) ("not everyone keeps their Lego boxes and other packaging")].) Fifth, although some packaging sold in 1978 contained a perforated tab to facilitate opening, these tabs did not permit the packaging to be resealed after opening. (ECF No. 236, Zuru SOF, Def's Ex. 41 [Johansen Tr. Vol. 1 at 135:20-136:20]; Ex. 39 [Carr Tr. Vol. 1 at 245:19-246:21, 451:20-454:13]; Ex. 40 [Carr Tr. Vol. 2 at 540:7-543:25, 608:16-609:15]; Ex. 44 [Knight Tr. Vol. 2 at 339:8-340:10]; Ex. 7 [Loetz Report at 70-72, Loetz Video at Chapter 1 (Lego Minifigure.) Finally, Lego ignores that it (or its licensee) also sold minifigures as standalone products in "blister packs" that could only be torn open and that have no means to be reclosed after being opened. (ECF No. 236, Zuru SOF, Def's Ex. 44 [Knight Tr. Vol. 2 at 381:21-383:23]; ECF No. 236, Zuru SOF, Def's Ex. 41 [Johansen Tr. Vol. 1 at 84:16-85:4, 139:16-19]; ECF No. 236, Zuru SOF, Def's Ex. 40 [Carr Tr. Vol. 2 at 549:24-554:1]; ECF No. 239-50, Def's Ex. 49 [LEGOGROUP0017282-83]; ECF No. 269-2, Nunziati Dec. ¶¶6-15; Def's Ex. 106 [Rich Tr. at 52:12-62:15]; Def's Ex. 107 [Beaty Tr. at 141:7-150:16, 152:1-153:20, 157:18-161:19, 186:4-187:6, 192:23-193:12].)

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | DEFENDANT, ZURU Inc. |
| Dated:  May 6, 2022 | */s/ Fatima Lahnin*<br>Fatima Lahnin (ct24096)<br>Marc J. Kurzman (ct01545)<br>Carmody Torrance Sandak & Hennessy LLP<br>195 Church Street<br>P.O. Box 1950<br>New Haven, CT 06509<br>Tel.: (203) 777-5501<br>Fax: (203) 784-3199<br>flahnin@carmodylaw.com<br>mkurzman@carmodylaw.com<br><br>Quinn Emanuel Urquhart & Sullivan, LLP<br>Michael T. Zeller (phv 10063)<br>Daniel C. Posner (phv 10604)<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Tel: 213-443-3000<br>Fax: 213-443-3100<br>michaelzeller@quinnemanuel.com<br>danposner@quinnemanuel.com<br><br>Claudia Bogdanos (phv 20532)<br>Charles B. Straut (phv 11194)<br>51 Madison Avenue<br>New York, NY 10010<br>Tel: 212-849-7082<br>claudiabogdanos@quinnemanuel.com<br>charlesstraut@quinnemanuel.com<br><br>Eric Olavson (phv10570)<br>Senior Legal Counsel at Zuru Inc.<br>12020 Sunrise Valley Drive, Ste 100<br>Reston, VA 20191<br>Tel: (801) 560-5981<br>Fax: (855) 581-9683<br>eric.olavson@zuru.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

　　　　　　　　　　　　　　　　　　　　　*/s/ Fatima Lahnin*
　　　　　　　　　　　　　　　　　　　　　Fatima Lahnin