UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------ x
LEGO A/S; LEGO SYSTEMS, INC.;    :
and LEGO JURIS A/S,              :
                                 :
          Plaintiffs,            :
                                 :
                                 :   Civil No. 3:18-cv-2045 (AWT)
v.                               :
                                 :
ZURU INC.,                       :
                                 :
          Defendant.             :
------------------------------ x
```

**RULING ON DEFENDANT'S MOTION TO DISSOLVE PRELIMINARY INJUNCTION**

Lego A/S, Lego Systems, Inc., and LEGO Juris A/S (collectively, "the LEGO Group") filed suit against defendant Zuru Inc. ("Zuru") alleging infringement of several of the LEGO Group's copyrights, trademarks, and design patents. The court issued a preliminary injunction against Zuru on July 8, 2019, and several months later the court found Zuru in contempt for violating the court's preliminary injunction order. Defendant Zuru now moves to dissolve the court's Ruling on Motion for Preliminary Injunction (ECF No. 86), Preliminary Injunction Order (ECF No. 87), and Ruling on Motion for Contempt (ECF No. 139) on the basis of judicial estoppel and the LEGO Group's alleged lack of candor toward the court. For the reasons set forth below, the defendant's motion is being denied.

I.   **FACTUAL BACKGROUND**

Zuru contends that the LEGO Group advanced positions in the preliminary injunction hearing in this case that are contrary to the positions it advanced in another case in this district, so the court should reconsider the preliminary injunction and contempt rulings in favor of the LEGO Group in this case. That other case is Lego A/S v. Best-Lock Construction Toys, Inc., 3:11-cv-1586 (CSH) (D. Conn.) ("Best-Lock"). Zuru underscores in particular differences between how the LEGO Group characterized MEGA Bloks figurines and KRE-O figurines in Best-Lock and how it has characterized them in this case.

In October 2011, the LEGO Group filed suit against Best-Lock Construction Toys, Inc. and Best-Lock Limited, Hong Kong (collectively, "Best-Lock"), for, inter alia, copyright infringement based on Best-Lock's production, sale, and distribution of a figurine which the LEGO Group contended infringed the LEGO Group's exclusive rights in registered copyrights protecting the LEGO Group's Minifigure figurine.

In response, in February 2012, Best-Lock filed a motion seeking a preliminary injunction against the LEGO Group. In its motion, Best-Lock argued that the LEGO Group was "improperly asserting protection in designs and features that are common in figures of this nature," and it pointed to "numerous similar third party toy blocks and figures, including those sold by

Hasbro [and] Mega Bloks," among others. Defs.' Mot. for Prelim. Inj. (ECF No. 37-1), Best-Lock, 3:11-cv-1586 (CSH), at 21. Best-Lock contended that "these third parties sell figures that are identical in concept, identical or comparable in their functional features, compatible with others' toy figures, and similar in appearance to Lego's products." Id. In addition, Best-Lock argued that the LEGO Group was equitably estopped from claiming copyright infringement because it "was entirely unaware that Lego would assert a claim." Id. at 14. Best-Lock pointed to figurines by "Hasbro [and] Mega Bloks," among others, as "third party toy figures with configurations that are similar, if not virtually identical, to Lego's figures," id., but stated that it was "unaware of any action that Lego has pursued against these other manufacturers," id. at 15.

In its memorandum in opposition to Best-Lock's motion for a preliminary injunction, the LEGO Group stated:

> The mechanical elements claimed in the '482 Patent can be—and since the patent has expired, have been—used by other manufacturers in a manner that does not capture the overall look and feel of the Minifigure Copyrights. For example, some current MEGA Bloks® and KRE-O® sets contain figurines with recesses in the feet and calves that allow the figurine to stand upright or sit down on a studded base plate, including a genuine LEGO® brand base plate, and use pivotal pins at the hips. (See, e.g., Exhibit 3.) The following photographs of MEGA Bloks®—on the left—and KRE-O® figurines—on the right—show their interoperability with a LEGO® base plate and their different aesthetic features:

[Photographs omitted]

> These examples demonstrate that features covered by the
> claim of the '482 Patent can be accomplished separably,
> without copying the identical, aesthetic features of the
> Minifigure Copyrights.

Pls.' Mem. (ECF No. 43), <u>Best-Lock</u>, 3:11-cv-1586 (CSH), at 19-20

(footnote omitted).

On March 8, 2012, the court held a hearing on Best-Lock's

motion for a preliminary injunction. During oral argument, the

following exchanges occurred between Judge Haight and counsel

for the LEGO Group, Ms. Alquist:

> THE COURT: Okay. So, to sum up, behind the LEGO figurine
> on the right hand side, there are two Hasbro figurines,
> correct?
>
> MS. ALQUIST: [That is] correct.
>
> THE COURT: And behind the Best-Lock figurine on the left
> hand side, there are two -- what's the company again?
>
> MS. ALQUIST: MEGA, M-E-G-A.
>
> THE COURT: Two MEGAs, all right. My question is, looking
> first at the two Hasbro figurines on the right hand side,
> why isn't LEGO suing Hasbro for infringement?
>
> MS. ALQUIST: Well, that's a charged question, but --
>
> THE COURT: I'm just trying to learn because they look so
> much alike so I'm trying it figure out -- because I think
> that, I prefer to think there's some sense to my
> question. What I'm trying to explore with you is the
> perception, the rationale, the concepts which inform
> LEGO's choices in litigation. Do you see what I mean?
>
> MS. ALQUIST: I absolutely do.
>
> THE COURT: I think it's a fair question and whether --
> well, I hope you agree. I'm going to ask it anyway, but
> it's prompted in part at least -- you have only yourself

-4-

to blame -- by this fascinating exhibit you gave me.

MS. ALQUIST: Exactly.

THE COURT: LEGO, who makes the front figure on the base plate on the right, is suing the manufacturer of the front figure on the left but why isn't LEGO suing Hasbro, who made the two figures directly below -- withdrawn -- directly behind the LEGO figure?

MS. ALQUIST: And the answer, Your Honor, is because these are not identical. They are not -- they are a particularized expression of an idea and that is different from this one.

THE COURT: Just for the sake of the record, you said that the two, the two Hasbro figures are not identical to the LEGO figure which is in the front row.

MS. ALQUIST: In the front row and, of course, I mean the copyright, but that is derivative work and embodiment of the copyright certainly.

THE COURT: Right.

MS. ALQUIST: The geometry, the look and feel, everything about the LEGO copyright as shown here in this minifigure and the infringing, the accused infringing figure in here are identical. Their shoulders are the same, the hips are the same. Everything, the overall look and fit is the same. These are different geometries, different proportions. They do -- they have a different expression.

THE COURT: You first indicated with your finger, I think, the two Hasbros.

MS. ALQUIST: The two Hasbros, yes, Your Honor, yes.

THE COURT: Okay. Why are you not suing MEGA for infringement, looking now at the two figurines who are behind the accused Best-Lock figurine?

MS. ALQUIST: It's the same reason. The difference in the overall look, feel, shape of the MEGA figurine is a different expression. It's not -- you couldn't put them both in the same mold and come out with the same exact

> dimensions and geometry with MEGA as you can with Best-
> Lock and with the LEGO protected copyright in the toy
> sculpture.
>
> THE COURT: Okay. All right, good. All right, that's the
> line of questioning that I had in mind provoked or
> inspired, whichever word might be correct, by your own
> exhibit which is now Court Exhibit One for the record.

Tr., Oral Arg. (ECF No. 70), Best-Lock, 3:11-cv-1586 (CSH),

at 68:14-71:6. The transcript for this proceeding was

docketed on March 26, 2012 and became publicly available on

June 24, 2012.

In April 2016, the LEGO Group moved for summary judgment

against Best-Lock. In its memorandum in support of summary

judgment, the LEGO Group included the following in a footnote:

> LEGO explained how easy it would be to create non-
> infringing figurines that maintain their functionality
> in its Opposition to Best-Lock's Motion for Preliminary
> Injunction. (Doc. No. 43 at 19-20.)

Pls.' Mem. (ECF No. 131), Best-Lock, 3:11-cv-1586 (CSH), at 34

n.10. This was a reference by the LEGO Group to the above-quoted

passage in its opposition to Best-Lock's motion for a

preliminary injunction.

Zuru contrasts these statements with others made in the

course of this litigation. Zuru first points to the LEGO Group's

characterization of a chart Zuru provided that included KRE-O

and MEGA Bloks figurines, see ECF No. 37 at 34, as containing

"similarly infringing figurines," ECF No. 47 at 5. Zuru next

points to the testimony of David Buxbaum, the LEGO Group's
corporate designee, during the preliminary injunction hearing in
this case. Counsel for Zuru presented Buxbaum with an exhibit
which "show[ed] a large collection of minifigures," Ex. 10,
Def.'s Mot (ECF No. 253-10), at 21:13, including "a Kre-O
figure" as well as "a LEGO figure," id. at 22:1-2. Counsel then
asked Buxbaum whether he would "agree that these are all
competitive minifigures with the LEGO figure." Id. at 22:5-6. In
response, Buxbaum replied, "I believe they are all very similar
and frankly, I think they are pretty much all infringing on our
intellectual property rights." Id. at 22:7-9. Zuru also points
to the testimony of Elizabeth Knight, the LEGO Group's expert
witness, during the preliminary injunction hearing. In response
to a question about whether "the Kre-O figure is similar to the
LEGO figure," Ex. 11, Def.'s Mot. (ECF No. 253-11), at 292:24-
25, Knight replied, "Yes. Very much," id. at 293:1. Finally,
Zuru points to the LEGO Group's failure, in responses to
interrogatories, "to identify the Kre-O figurine as a 'Lego-
compatible figurine[] that [is] differentiated enough so as to
not infringe on [Lego's] intellectual property rights.'" Def.'s
Reply (ECF No. 292) at 3.

　　　　Zuru contends that these statements contradict the LEGO
Group's representations to the court in Best-Lock and are
subject to judicial estoppel, and also that these statements are

misrepresentations that render inequitable the preliminary
injunction in this case.

## II.  LEGAL STANDARD

"The power of a district court to modify its past
injunctive decrees in order to accommodate changed circumstances
is well established." Ass'n Against Discrimination in
Employment, Inc. v. City of Bridgeport, 710 F.2d 69, 74 (2d Cir.
1983). "While changes in fact or in law afford the clearest
bases for altering an injunction, the power of equity has
repeatedly been recognized as extending also to cases where a
better appreciation of the facts in light of experience
indicates that the decree is not properly adapted to
accomplishing its purposes." King-Seeley Thermos Co. v. Aladdin
Indus., Inc., 418 F.2d 31, 35 (2d Cir. 1969). Although a court
may "modify an injunction even in the absence of changed
conditions, the power should be sparingly exercised. 'Firmness
and stability must no doubt be attributed to continuing
injunctive relief based on adjudicated facts and law, and
neither the plaintiff nor the court should be subjected to the
unnecessary burden of re-establishing what has once been
decided.'" Id. (quoting System Federation v. Wright, 364 U.S.
642, 647 (1961)).

**III. DISCUSSION**

Zuru moves to dissolve the preliminary injunction on three separate grounds. First, Zuru maintains that there is a change in the operative facts supporting the injunction because Zuru only recently discovered certain statements made by the LEGO Group in connection with the preliminary injunction hearing in Best-Lock. Second, Zuru maintains that judicial estoppel requires the court to hold the LEGO Group to those statements made in connection with the Best-Lock preliminary injunction hearing and that shifting representations by the LEGO Group allowed it to derive an unfair advantage in this case, which requires the court to dissolve the injunction. Third, Zuru maintains that allowing the preliminary injunction to remain in effect is inequitable in light of what Zuru characterizes as the LEGO Group's misrepresentations in this case.

**A.   Changed Circumstances**

Zuru has not identified any "changes in fact or in law" that justify altering the preliminary injunction in this case. King-Seeley Thermos, 418 F.2d at 35 ("Changes in fact or in law afford the clearest basis for altering an injunction."). Zuru contends that "Lego's admissions from Best Lock establish a 'change in the operative facts so that the injunction is no longer justified.'" Def.'s Mem. (ECF No. 251) at 22 (quoting Helmer v. Briody, 721 F.Supp. 498, 505 (S.D.N.Y. 1989)). Zuru

argues that it could not have presented this information earlier because "those admissions were buried in briefing and a hearing transcript from a separate lawsuit in 2012," "the injunction proceedings were expedited and done without the benefit of any discovery," and "at the time of the injunction proceedings, the case was far broader than it is now." Def.'s Reply at 12.

However, the statements in question by the LEGO Group made during the <u>Best-Lock</u> litigation "have been publicly available on PACER for 10 years, and had already been available for 7 years at the time of this Court's preliminary-injunction ruling." Pls.' Opp. (ECF No. 289) at 14.[1] Thus, Zuru has not identified a change in operative facts or law since the date the preliminary injunction issued that provides a basis for modifying or dissolving the injunction in this case. See <u>Helmer</u>, 721 F.Supp. at 505.

**B. Judicial Estoppel**

Zuru also moves to dissolve the preliminary injunction on the basis that "judicial estoppel requires that Lego be held to the positions it took in <u>Best Lock</u>." Def.'s Mem. at 20.

---

[1] Moreover, as pointed out by the LEGO Group, "ZURU's opposition to the preliminary-injunction motion in this case--filed on January 22, 2019--cited Judge Haight's opinion and specifically discussed the functionality analysis in which Judge Haight repeatedly referred to KRE-O and MEGA Bloks figurines. ECF No. 37 at 14 (citing <u>LEGO A/S v. Best-Lock Const. Toys, Inc.</u>, 874 F. Supp. 2d 75, 99-102 (D. Conn. 2012))." Pls.' Opp. at 14.

"Judicial estoppel is a doctrine that forbids a party from advancing contradictory factual positions in separate proceedings." AXA Marine and Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc., 84 F.3d 622, 628 (2d Cir. 1996). Judicial estoppel applies when "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)). Judicial estoppel should be invoked only in "situations where the risk of inconsistent results with its impact on judicial integrity is certain." Id. (quoting Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 148 (2d Cir. 2005)).

Judicial estoppel applies only to "inconsistent factual positions," not to "legal conclusions" advanced by a party, Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Loc. 38, 288 F.3d 491, 504 (2d Cir. 2002), cert. granted, judgment vacated on other grounds 538 U.S. 918 (2003), or "seemingly inconsistent legal positions," Seneca Nation of Indians v. State of New York, 26 F.Supp.2d 555, 565 (W.D.N.Y. 1998). In Cleveland v. Policy Management Systems Corporation, the Supreme Court addressed whether judicial estoppel was applicable with respect

to a statement made in support of an application for Social
Security disability benefits when the plaintiff subsequently
brought claims under the Americans with Disabilities Act
("ADA"). The Court held that the plaintiff's statement, "I am
too disabled to work," made in order to obtain Social Security
benefits, did not inherently conflict with her later statement,
"I am not too disabled to work," made in support of her claim
under the ADA. Because the case did not "involve directly
conflicting statements about purely factual matters, such as
'The light was red/green,' or 'I can/cannot raise my arm above
my head,'" the plaintiff's statements were not subject to
judicial estoppel. 526 U.S. 795, 802 (1999). See also Bridgeway
Corp. v. Citibank, 201 F.3d 134, 141 (2d Cir. 2000) (requiring
that the party's prior factual statements be "clearly
contradictory to its present position" for judicial estoppel to
apply).

     Thus, in United States v. West Productions, Ltd., the court
found that judicial estoppel was applicable where in a prior
case the party "forcefully told Judge McKenna that she was a
general partner of West Productions" but "in this case she tells
this Court with equal force that she was not." 168 F.Supp.2d 84,
89 (S.D.N.Y. 2001). Likewise, in Intellivision v. Microsoft
Corporation, the court held that "[t]he plaintiffs' current
claims directly contradict their representations at every

previous stage of this case" because the plaintiffs originally described certain patent applications "as Intellivision's property and as assigned by Intellivision" but later claimed that "Intellivision never owned the Patent Applications." 784 F.Supp.2d 356, 362 (S.D.N.Y. 2011).

Here, Zuru cannot show that even the first prerequisite for applicability of judicial estoppel is present here, i.e., Zuru cannot shown that a factual position taken by the LEGO Group in this case is clearly inconsistent with a factual position it took in Best-Lock. Thus, the court does not reach the second and third prerequisites.

Zuru points to four categories of statements which it contends constitute "clearly inconsistent representations": (1) "whether the Kre-O and Mega Bloks figurines are 'infringing' of Lego's asserted minifigure rights," (2) "whether those figurines are 'different expressions' of the minifigure," (3) "whether supposedly 'minor differences' such as those between the Kre-O figurine and the minifigure are relevant in assessing similarity," and (4) "whether Lego's asserted copyrights are limited to protecting against 'identical' copies of the minifigure." Def.'s Mem. at 20. In its reply, Zuru provides a "chart" which "summarizes Lego's starkly inconsistent positions on the same issue." Def.'s Reply at 3. There, Zuru identifies four sets of statements in Best-Lock, the first three of which

were made during oral argument and/or briefing in connection
with the motion for a preliminary injunction in Best-Lock and
the last of which was made in support of the LEGO Group's motion
for summary judgment in Best-Lock. Zuru pairs each of the four
with a statement by the LEGO Group in this case. Zuru contends
that judicial estoppel is applicable because it has identified
factual positions advanced in different proceedings that
clearly, directly, and irreconcilably contradict with one
another. The court disagrees.

    As a preliminary matter, it is not clear that all of the
statements at issue, either in this litigation or in Best-Lock,
are "factual positions." AXA Marine, 84 F.3d at 628 (applying
judicial estoppel only to "contradictory factual positions").

    With respect to statements in Best-Lock, although
statements regarding the physical differences between various
kinds of figurines described by counsel during oral argument in
Best-Lock may be factual positions for purposes of judicial
estoppel, statements about the ease of creating "non-infringing
figurines that maintain their functionality" are, at most,
argument by counsel regarding mixed issues of fact and law as
opposed to factual positions. Pls.' Mem. (ECF No. 131), Best-
Lock, 3:11-cv-1586 (CSH), at 34 n.10. Cf. Bates v. Long Island
R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993) (judicial estoppel
applied where plaintiff "argued that he was permanently disabled

-14-

from physical labor in his previous FELA action, yet now argues
that he is not permanently disabled and should be reinstated");
West Productions, Ltd., 168 F.Supp.2d at 89 ("In the Serino case
Corto forcefully told Judge McKenna that she was a general
partner of West Productions; in this case she tells this Court
with equal force that she was not.").

Also, statements in this case describing the physical
similarities between figurines may be factual positions for
purposes of judicial estoppel, but the LEGO Group's statements
that the figurines are "similarly infringing," ECF No. 47 at 5,
or "all infringing on our intellectual property rights," Ex. 10,
Def.'s Mot., at 22:8-9, and the LEGO Group's failure to identify
KRE-O figurines as non-infringing in response to Zuru's
interrogatories, see Def.'s Reply at 3, do not constitute
factual positions for purposes of judicial estoppel. Cf.
Cleveland, 526 U.S. at 802 (noting how judicial estoppel clearly
applies to "directly conflicting statements about purely factual
matters, such as 'The light was red/green,' or 'I can/cannot
raise my arm above my head'").

However, even assuming that statements identified by Zuru
are factual positions for purposes of judicial estoppel, Zuru
has not shown that the LEGO Group's position in this litigation
is clearly inconsistent with its position in the Best-Lock
litigation. See Simon v. Safelite Glass Corp., 128 F.3d 68, 72-

73 (2d Cir. 1997) ("[T]here must be a true inconsistency between the statements in the two proceedings. If the statements can be reconciled there is no occasion to apply an estoppel."). Moreover, "a court must carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction." Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 119 (2d Cir. 2004).

Zuru fails to meet the governing standard with respect to showing that there are clearly inconsistent factual positions here for two reasons. First, there are material differences between the nature of the statements at issue and the nature of the statements in, for example, Cleveland, West Productions, or Intellivision. In Best-Lock, the only figurines under discussion were the LEGO Group minifigure and the KRE-O and MEGA Bloks figurines. The Zuru figurines were not even in existence. Thus, to support its position here, Zuru argues:

> If the Kre-O figurine is a non-infringing "different expression" of a figurine, . . . then Zuru's figurines cannot be "virtually identical" to the minifigure to the point that no ordinary observer could distinguish it. . . . As is readily apparent, the Zuru figurines are at least as different from the minifigure as the Kre-O figurine.

Def.'s Mem. (ECF No. 251) at 2. Implicit in that statement, of course, is a qualifier, i.e., at least as different in ways that

matter for purposes of this litigation. In support of this
argument, Zuru also relies upon what it refers to as admissions
or concessions it got during the deposition in this case of
LEGO's expert, Elizabeth Knight. Consequently, the court agrees
with the LEGO Group that Zuru is asking the court to make an
"inferential leap." Pls.' Opp. at 21. If statements of a factual
position by the LEGO Group were clearly inconsistent and
irreconcilable, then the court would not have to go outside of
the statements themselves to reach the legal conclusion urged by
Zuru. As the LEGO Group contends, "[a]t most, statements about
whether particular KRE-O or MEGA Bloks figurines do or do not
infringe the Minifigure Copyrights 'may be impeaching' and a
proper subject for cross-examination." Pls.' Opp. at 23 (quoting
Remcor Products Co. v. Scotsman Group, Inc., 860 F.Supp. 575,
579 (N.D. Ill. 1994)).

Second, there are important differences between the context
in which the pertinent statements in Best-Lock were made and the
context in which the pertinent statements were made in this
case. In those situations where courts have found that there is
in fact a direct and irreconcilable contradiction, the context
for the statement did not change in any material respect. As
illustrated in other cases, "directly conflicting statements
about purely factual matters, such as 'The light was red/green,'
or 'I can/cannot raise my arm above my head,'" relate to

-17-

contexts that are the same, i.e., whether a specific light was red or green at a given point in time and whether an individual could or could not lift her arm during the relevant period of time. Cleveland, 526 U.S. at 802. But here, as noted above, the Zuru figurine was not even in existence until years after the pertinent statements in Best-Lock were made. As the LEGO Group points out, "ZURU's MAX Figurines and the KRE-O figurines discussed in Best-Lock are not the same product. And at the very least, the available evidence regarding the two figurines is completely different." Id. at 21. In this case, the LEGO Group introduced evidence of actual consumer confusion between its minifigures and the Zuru figurines, and in addition, it has developed expert evidence with respect to the likelihood of confusion. In this case, there is an "evidentiary record specifically directed to ZURU's infringing products," whereas the earlier statements were made about "different figurines that were not the subject of litigation, on a different record." Id. Rather, in Best-Lock, the statements were made in the context of responding to Best-Lock's contention that third parties were selling figures that were "identical in concept, identical or comparable in their functional features," and "compatible with others' toy figures," and thus the LEGO Group was equitably estopped from asserting a claim for copyright infringement against Best-Lock. Pl.'s Opp. at 3 (quoting Defs.' Mot. for

Prelim. Inj. (ECF No. 37-1), Best-Lock, 3:11-cv-1586 (CSH), at
21). Also, with respect to the statements by counsel for the
LEGO Group during oral argument, they all occurred in the
context of an explanation, in response to an inquiry by the
court, as to why the LEGO Group was not suing Hasbro or MEGA.
The focus of that explanation was on the difference between
Best-Lock figurines (which were identical) and Kre-O and Mega
Bloks figurines (which were not identical), not on the
difference between the LEGO Group's minifigures and the Kre-O
and Mega Bloks figurines. The focus of the case was on the
absence of any difference between the LEGO Group's minifigures
and the Best-Lock figurines. Thus, when one carefully considers
the context in which the statements were made, there is no
irreconcilable contradiction.

Because the LEGO Group's representations to the court in
Best-Lock do not irreconcilably contradict its representations
in this case, there is no basis for the court to apply judicial
estoppel here.

### C.   Lack of Candor

Zuru argues that "it is inequitable for the injunction to
continue because Lego obtained it based on misleading factual
and legal representations and material omissions." Def.'s Mem.
at 31. Zuru maintains that "Lego's inconsistent positions create
a clear perception that Lego intentionally misled this Court,

and that Lego has abused the integrity of the judicial process."
Id. The court disagrees.

"[E]quitable relief typically will not be granted to an
individual who has acted in bad faith with respect to the
transaction that has been brought before the court," 11A Fed.
Prac. & Proc. Civ. § 2946 (3d ed.), and an "injunction procured
by material misrepresentations may not be sustained," qad. Inc.
v. ALN Assocs., Inc., 974 F.2d 834, 837 (7th Cir. 1992) (citing
Coastal Corp. v. Texas Eastern Corp., 869 F.2d 817, 818
(5th Cir. 1989)).

Here, Zuru presents only a conclusory statement that the
LEGO Group acted in bad faith in seeking a preliminary
injunction against Zuru. Zuru has not offered evidence that the
LEGO Group gave the court "sworn testimony and documentary
evidence later show[n] to be knowingly false when made," Def.'s
Mem. at 30 (citing B.P.G. Autoland Jeep-Eagle, Inc. v. Chrysler
Credit Corp., 799 F.Supp. 1250, 1257 (D. Mass. 1992)), or that
the LEGO Group's "presentation at the [Injunction] Hearing was
grounded in knowing falsehood," id. at 31 (quoting qad. Inc. v.
ALN Assocs., Inc., 974 F.2d 834, 837 (7th Cir. 1992)).

Thus, Zuru has not demonstrated that it should receive
equitable relief on this ground.

**IV.   CONCLUSION**

Accordingly, Defendant's Motion to Dissolve Preliminary
Injunction (ECF No. 252) is hereby DENIED.

It is so ordered.


Dated this 31st day of March 2023, at Hartford,
Connecticut.


/s/AWT
_____
Alvin W. Thompson
United States District Judge
