**MANDATE**

24-634-cv
*Lego A/S v. Zuru Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of December, two thousand twenty-five.

PRESENT:
JOHN M. WALKER, JR.,
JOSEPH F. BIANCO,
*Circuit Judges.*[*]

---

LEGO A/S, LEGO SYSTEMS, INC., LEGO JURIS A/S,

    *Plaintiffs-Counter-Defendants-Appellees*,

v.                                                                                                24-634-cv

ZURU INC.,

    *Defendant-Counter-Claimant-Appellant*.

---

| | |
|---|---|
| FOR DEFENDANT-COUNTER-CLAIMANT-APPELLANT: | Daniel C. Posner, Todd Anten, William B. Adams, and Dylan I. Scher, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, California, and New York, New York; Fatima Lahnin, Carmody Torrance Sandak & Hennessey LLP, New Haven, Connecticut. |

---

[*] Judge Richard C. Wesley was a member of this panel, but recused himself from consideration of this appeal.  The remaining two judges, who are in agreement, issue this summary order in accordance with Second Circuit Internal Operating Procedure E(b).

**MANDATE ISSUED ON 12/31/2025**

| | |
|---|---|
| FOR PLAINTIFFS-COUNTER-DEFENDANTS-APPELLEES: | John W. Cerreta, Elizabeth A. Alquist, Andraya P. Brunau, Juliana M. Campochiaro, and Carolyn Rennie, Day Pitney LLP, Hartford, Connecticut. |

Appeal from an order of the United States District Court for the District of Connecticut (Alvin W. Thompson, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this appeal is **DISMISSED** for lack of appellate jurisdiction.

Zuru, Inc. ("Zuru") appeals from the district court's order determining that its redesigned toy figurines (the "Third-Generation figurines") are subject to a preliminary injunction order previously entered in this case. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer to only as necessary to explain our decision to dismiss this appeal for lack of jurisdiction.

## BACKGROUND

Lego A/S, Lego Systems, Inc., and Lego Juris A/S ("Lego") brought claims against Zuru alleging that Zuru's "First-Generation" toy figurines infringe on the copyright and trademark rights of Lego's Minifigure figurine.[1] In 2019, the district court granted Lego's motion for a preliminary injunction and enjoined Zuru from, *inter alia*, manufacturing or selling the infringing First-Generation figurines and "any figurine or image that is *substantially similar to* the Minifigure Copyrights or *likely to be confused with* the Minifigure Trademarks[.]" Joint App'x at 152 (emphasis added). The Federal Circuit affirmed the portion of the preliminary injunction pertaining to Zuru's figurines. *See Lego A/S v. Zuru Inc.*, 799 F. App'x 823, 827–32 (Fed. Cir. 2020).

---

[1] In the complaint, Lego also asserted a design patent infringement claim, and a claim brought under the Connecticut Unfair Trade Practices Act, neither of which is at issue on this appeal.

2

After Zuru released its "Second-Generation" figurines, the district court held Zuru in contempt, finding that Lego had demonstrated by clear and convincing evidence that the Second-Generation figurines are "substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks" in violation of the preliminary injunction order. Joint App'x at 169 (internal quotation marks and citation omitted). The district court then modified the preliminary injunction order by requiring Zuru to give 30 days' notice before manufacturing or selling any new figurines.

In November 2023, Zuru filed such a notice of intent to manufacture and sell "Third-Generation" figurines, and the district court issued an order enjoining the manufacture and sale of the Third-Generation figurines because the court found that they are "subject to the [existing] Preliminary Injunction Order." *Lego A/S v. Zuru Inc.*, No. 3:18-cv-2045 (AWT), 2024 WL 992929, at *2 (D. Conn. Feb. 5, 2024) ("*Lego I*").

On appeal, this Court remanded the case to the district court, pursuant to *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), for it to "supplement the record by providing its assessment of whether the Third-Generation figurines are substantially similar to or likely to be confused with Lego's Minifigure." *Lego A/S v. Zuru Inc.*, No. 24-634-cv, 2025 WL 915027, at *3 (2d Cir. Mar. 26, 2025) ("*Lego II*"). We also instructed the district court on remand to "apply the more discerning observer test in its assessment of substantial similarity." *Id.*

On remand, the district court again concluded (in a twenty-nine-page supplemental order) that "LEGO has established that the Third-Generation Figurines fall within the scope of the preliminary injunction order" because they are substantially similar to and likely to be confused with Lego's Minifigure. *Lego A/S v. Zuru Inc.*, No. 3:18-cv-2045 (AWT), 2025 WL 1518284, at *12 (D. Conn. May 28, 2025) ("*Lego III*").

3

Before this Court for the second time, Zuru now argues that the district court on remand "erred as a matter of law in its assessments of similarity and confusion" and therefore "it necessarily modified the Preliminary Injunction." Appellant's Supp. Br. at 8.

## DISCUSSION

As it did prior to our remand to the district court, Lego again argues that we lack appellate jurisdiction to hear this appeal. As we summarized in our prior remand order:

> This Court has jurisdiction over appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). We lack jurisdiction, however, over appeals from orders that merely interpret or clarify the terms of an injunction. *See JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 100 (2d Cir. 2024). When determining whether an order interprets or modifies an injunction, this Court applies *de novo* review, which requires at least a peek at the merits. *See In re Tronox Inc.*, 855 F.3d 84, 98 (2d Cir. 2017); *see also EEOC v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 76 F.3d 76, 79 & n.2 (2d Cir. 1996). The merits inquiry is more searching, however, where "the language the district court is interpreting is tied to a term defined by law." *In re Tronox Inc.*, 855 F.3d at 99. Those legal conclusions are reviewed *de novo*. *Id.*

*Lego II*, 2025 WL 915027, at *2.

Because the existing preliminary injunction "rightly applies to any figurine that meets the legal standard for copyright infringement (substantial similarity) or trademark infringement (likelihood of confusion)[,]" *id.*, if the Third-Generation figurines are substantially similar to *or* likely to be confused with Lego's Minifigure, they would fall within the existing preliminary injunction order (without modification), and we would lack jurisdiction over this appeal. As set forth below, we conclude that we lack appellate jurisdiction because the district court correctly determined that the Third-Generation figurines fall within the existing injunction both because of their substantial similarity to, and likelihood of confusion with, Lego's Minifigure.

4

I.      **Substantial Similarity**

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of a work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). To prove the second element, the plaintiff must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (internal quotation marks and citation omitted). We review *de novo* a district court's determination of substantial similarity. *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020).

On remand, the district court first identified the proper legal standard: the more discerning observer test. In particular, the district court recognized that it "must attempt to extract the unprotectable elements from [its] consideration and ask whether the *protectable elements, standing alone*, are substantially similar." *Lego III*, 2025 WL 1518284, at *2 (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (emphasis in *Knitwaves*)). At the same time, the district court also correctly noted that, even under the more discerning observer test, the analysis is still "principally guided by comparing the contested design's total concept and overall feel with that of the allegedly infringed work as instructed by [the court's] good eyes and common sense." *Id.* (quoting *Peter F. Gaito Architecture, LLC*, 602 F.3d at 66 (internal quotation marks and citations omitted)).

The district court then thoroughly applied this legal standard to the facts in the instant case. First, it concluded that the following elements of Lego's Minifigure are not protectable: (1) the stud projection on top of the head; (2) the inside radius of the c-shaped hands; and (3) the holes

5

that receive stud projections at the base of the feet and back of the legs.[2]  *Id.*  Next, the district court summarized in detail the dueling opinions of Lego and Zuru's experts.  Lego's expert opined that

> the overall look and feel of each [Third-Generation] Figurine is substantially similar to the overall look and feel of the Asserted Copyrights . . . embodied by the LEGO Minifigure figurine as evidenced by a side-by-side comparison of photographs of the [Third-Generation] Figurines and LEGO Minifigure figurine.  The [Third-Generation] Figurines and the Minifigure figurine incorporate similar combinations of geometric shapes with similar overall proportions, including rectangular shapes, and slight curves.
>
> By reviewing an overlay of the silhouette of each [Third-Generation] Figurine layered upon the Minifigure figurine, it is evident that there are only miniscule differences between the figurines.
>
> Some of the [Third-Generation] Figurines are slightly taller than the Minifigure figurine, have a slightly more narrow waist, or slightly higher arms.  These differences do not change the overall look and feel of the figurines. . . .

*Id.* at *5 (alterations in original) (quoting Knight Decl. (Dist. Ct. Dkt. No. 322) ¶¶ 9–11).  After considering the expert opinions, the district court concluded that Lego's expert "properly support[ed]" her opinion on substantial similarity, while Zuru's expert's analysis was "deficient," *id.* at *6, and we discern no basis to disturb that determination based on the current record.

In sum, because the district court properly determined that Zuru's Third-Generation figurines are "substantially similar" to Lego's Minifigure and therefore fell within the existing preliminary injunction order, this Court lacks appellate jurisdiction.

---

[2]  In so concluding, the district court rejected Zuru's argument that fifteen elements of the Lego Minifigure are functional and therefore unprotectable.  *Lego III*, 2025 WL 1518284, at *3–4.  The district court also rejected the analysis of Zuru's expert witness, who "dissect[ed] the works into their separate components, and compare[d] only those elements which are themselves copyrightable" rather than comparing the contested design's "total concept and overall feel."  *Id.* at *5 (quoting *Peter F. Gaito Architecture, LLC*, 602 F.3d at 66).

6

## II. Likelihood of Confusion

The district court's conclusion that the Third-Generation figurines fall within the existing preliminary injunction order is also supported by a second independent ground: namely, likelihood of confusion. To evaluate likelihood of confusion (the relevant standard for trademark infringement under the Lanham Act), we apply the eight-factor test identified in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961). The eight factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may bridge the gap by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 110 (2d Cir. 2023) (internal quotation marks and citation omitted). "[W]e review *de novo* a ruling on whether the plaintiff has shown a likelihood of confusion because we consider the issue to be a question of law." *Id.* at 109 (internal quotation marks and citation omitted).

Here, on remand, the district court correctly identified the *Polaroid* factors as the relevant legal standard. *Lego III*, 2025 WL 1518284, at *7. It then proceeded to thoroughly analyze each factor. As to strength of the mark, the district court concluded that Lego "is likely to be able to show that the [a]sserted [t]rademark is strong" because, *inter alia*, "it spent in excess of $200 million on advertising and promotion" between 1978 and 2015, it sold over 120 million Minifigure figurines in the same time period, it sold the Minifigure for approximately 37 years before it submitted a trademark application, and it has "authorized licensees" and "takes steps to police activities by infringers." *Id.* at *8. As to the degree of similarity between the competing marks, the district court found that "there is a high degree of similarity between the Minifigure figurine and the Third-Generation Figurines," *id.*, as evidenced by a side-by-side comparison of the figures

7

and the fact that "adult purchasers of toys generally do not inspect individual details closely enough to recognize differences." *Id.* (internal quotation marks and citation omitted). Next, the district court determined that the competitive proximity of the products supports a finding of likelihood of confusion because "there is no difference between [the competing figurines] in terms of the relevant market they target." *Id.* at *9 (internal quotation marks and citation omitted). The district court also found that Zuru acted in bad faith in designing the Third-Generation figurines given the "truncated redesign process" that ultimately began with the Minifigure figurine itself as a model—especially when viewed in the context of Zuru's "actions throughout the course of this litigation[,]" *id.* at *11, including a "demonstrated lack of commitment to keeping a 'safe distance' from infringing conduct[.]" Joint App'x at 187. With respect to the sophistication of consumers in the relevant market, the district court adhered to its prior conclusion that "the purchase of inexpensive toy figures, intended for use by children, does not require a high degree of sophistication." *Lego III*, 2025 WL 1518284, at *12. Finally, the district court also determined that the likelihood of the senior user bridging the gap to the junior user's market, and the quality of Zuru's product, do not bear on the likelihood of confusion here.[3] *Id.* at *9, *12. Having considered all of the factors in light of the record, the district court concluded that Lego "is likely to be able to establish that the Third-Generation Figurines are likely to cause confusion." *Id.* at *7.

---

[3] As to the "actual confusion" factor, the district court first correctly noted that "actual confusion need not be shown to prevail under the Lanham Act[,]" *id.* at *9 (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)), and then concluded that this factor weighed in favor of finding likelihood of confusion here, *id.* at *10. However, as Zuru points out and Lego effectively concedes, neither party submitted evidence to the district court regarding actual confusion with respect to the Third-Generation figurines. Thus, on this record, we believe this factor is best considered as neutral given that Lego filed its emergency motion to enjoin the sale of the Third-Generation figurines twelve days after Zuru filed its notice of intent to manufacture and sell them, effectively precluding the possibility of evidence of actual confusion. In any event, even assuming *arguendo* that this factor weighs in favor of Zuru at this juncture, we still agree with the district court's overall conclusion that Lego has shown a likelihood of confusion.

We have reviewed the district court's thorough and careful consideration of the *Polaroid* factors, and we agree with its overall conclusion that, on this record, the Third-Generation figurines are likely to be confused with the Lego Minifigure. Because the Third-Generation figurines therefore fall within the scope of the existing preliminary injunction order based upon likelihood of confusion, that determination provides an independent ground for depriving this Court of appellate jurisdiction.

\*   \*   \*

We have considered the remaining arguments on appeal and find them to be without merit. Accordingly, we **DISMISS** this appeal for lack of appellate jurisdiction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

9