**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| LEGO A/S, LEGO Systems, Inc.,<br>and LEGO Juris A/S<br><br>    Plaintiffs,<br><br>        v.<br><br>ZURU Inc.<br><br>    Defendant. | )<br>)<br>)<br>)<br>)    Civil Action No. 3:18-cv-02045(AWT)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    May 4, 2026<br>) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO (1) FILE
SUPPLEMENTAL COUNTERCLAIMS AND (2) MODIFY SCHEDULING ORDER**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

    A.    The Preliminary Injunction, Contempt Order, and Cross Motions for Summary Judgment ................................................................................................................. 3

    B.    The Third Generation Figurines ................................................................................ 4

    C.    The Court Grants the LEGO Group's Motion for Summary Judgment ...................... 6

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ......................................................................................................................... 8

    I.    ZURU'S MOTION SHOULD BE DENIED AS MOOT ............................................. 8

        A.    Both This Court and The Second Circuit Found the Third Generation Figurines are Covered by the Preliminary Injunction ...................................... 8

        B.    The LEGO Group Already Prevailed on Summary Judgment, and the Third Generation Figurines Present No New Issues ........................................ 9

    II.    ZURU'S MOTION FAILS ........................................................................................ 10

        A.    Zuru Must Demonstrate Good Cause For Its Request To File the Proposed Counterclaims And Modify The Schedule ...................................... 10

        B.    Zuru Cannot Demonstrate Good Cause For Its Request To File the Proposed Counterclaims And Modify The Schedule ...................................... 11

            1.    Zuru Was Not Diligent and Unduly Delayed Bringing the Motion ...................................................................................... 12

            2.    Zuru's Request Will Prejudice the LEGO Group .............................. 14

            3.    Zuru Acted in Bad Faith ..................................................................... 15

            4.    Zuru's Proposed Counterclaims are Futile ........................................ 16

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agerbrink v. Model Serv. LLC*,
155 F. Supp. 3d 448 (S.D.N.Y. 2016).................................................................................14

*Aktiebolag v. Andrx Pharms., Inc.*,
695 F. Supp. 2d 21 (S.D.N.Y. 2010)..............................................................................12, 13

*Alexander v. Westbury Union Free Sch. Dist.*,
829 F. Supp. 2d 89 (E.D.N.Y. 2011) ...............................................................................16

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
11 F.4th 26 (2d Cir. 2021), *aff'd,* 598 U.S. 508 (2023) ............................................18

*Ansam Assocs. Inc. v. Cola Petroleum, Ltd.*,
760 F.2d 442 (2d Cir. 1985).............................................................................................14

*Biosafe-One, Inc. v. Hawks*,
639 F. Supp. 2d 358 (S.D.N.Y. 2009), *aff'd*, 379 F. App'x 4 (2d Cir. 2010).........................13

Brief for Defendant-Counter-Claimant-Appellant, *Lego A/S. v. Zuru Inc.*,
No. 24-634 (2d Cir. Dec. 10, 2025), Dkt. No. 32.1 ..................................................5

*Cerilli v. Rell*,
No. 3:08-CV-00242, 2010 WL 1330998 (D. Conn. Mar. 31, 2010) .......................................13

*Classicberry Ltd. v. Musicmaker.com, Inc.*,
48 F. App'x 360 (2d Cir. 2002) .......................................................................................14

*Cummings-Fowler v. Suffolk Cnty. Cmty. Coll.*,
282 F.R.D. 292 (E.D.N.Y. 2012) ......................................................................................6

*Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*,
No. 22-2106, 2024 WL 2712636 (2d Cir. May 28, 2024) .......................................................8

*Engles v. Jones*,
405 F. Supp. 3d 397 (W.D.N.Y. 2019).................................................................................17

*G.L.M. Sec. & Sound, Inc. v. LoJack Corp.*,
667 F. App'x 339 (2d Cir. 2016) .................................................................................7, 14

*Grochowski v. Phoenix Constr.*,
318 F.3d 80 (2d Cir. 2003)...............................................................................................13

*Int'l Techs. Marketing, Inc. v. Verint Sys., Ltd.*,
850 F. App'x 38 (2d Cir. 2021) ...................................................................................7

*Kahn v. Gen. Motors Corp.*,
865 F. Supp. 210 (S.D.N.Y. 1994) ...........................................................................12

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007)........................................................................................7

*Klein v. PetroChina Co.*,
644 F. App'x 13 (2d Cir. 2016) ..................................................................................9

*Krumme v. WestPoint Stevens, Inc.*,
143 F.3d 71 (2d Cir. 1998)........................................................................................14

*LEGO A/S v. Best-Lock Constr. Toys, Inc.*,
404 F. Supp. 3d 583 (D. Conn. 2019)........................................................................18

*LEGO A/S v. ZURU Inc.*,
799 F. App'x 823 (Fed. Cir. 2020) .............................................................................3

*Lego A/S v. Zuru Inc.*,
No. 24-634, 2025 WL 915027 (2d Cir. Mar. 26, 2025)..............................................5

*Lego A/S v. Zuru Inc.*,
No. 24-634, 2025 WL 3537350 (2d Cir. Dec. 10, 2025)..............................1, 6, 8, 16

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007)...............................................................................13, 14

*Morritt v. Stryker Corp.*,
973 F. Supp. 2d 177 (E.D.N.Y. 2013) .................................................10, 11, 15, 17

*Multi-State P'ship for Prevention, LLC v. Kennedy*,
No. 24-CV-00013, 2026 WL 121081 (E.D.N.Y. Jan. 16, 2026) .............................15

*Parker v. Columbia Pictures Indus.*,
204 F.3d 326 (2d Cir. 2000)........................................................................................7

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010)........................................................................................18

*Quaratino v. Tiffany & Co.*,
71 F.3d 58 (2d Cir. 1995)..........................................................................................12

*Rivers v. NY.C. Hous. Auth.*,
No. 2011-CV-05065, 2014 WL 1311557 (E.D.N.Y. Mar. 31, 2014),
*aff'd as modified*, 2014 WL 12829494 (E.D.N.Y. Nov. 17, 2014) ...............6, 13, 15

*Shubert v. Town of Glastonbury*,
No. 3:18-CV-00112, 2020 WL 6395472 (D. Conn. Nov. 2, 2020) ...............................7, 10, 11

*Smith v. P.O. Canine Dog Chas*,
No. 02-CV-06240, 2004 WL 2202564 (S.D.N.Y. Sept. 28, 2004).........................................17

*Sohk Sportswear, Inc. v. K.S. Trading Corp.*,
No. 02-CV-02016, 2003 WL 22208352 (S.D.N.Y. Sept. 23, 2003).......................................12

*Stein v. Janos*,
269 F. Supp. 2d 256 (S.D.N.Y. 2003).....................................................................................12

*Tiffany (NJ) Inc. v. eBay, Inc.*,
576 F. Supp. 2d 460 (S.D.N.Y. 2007).....................................................................................14

*Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*,
No. 99-CV04677, 2001 WL 1702151 (S.D.N.Y. Jan. 11, 2002)...............................................7

**Statutes**

15 U.S.C. § 1117...................................................................................................................2, 16

**Rules**

Fed. R. Civ. P. 15.......................................................................................................................6

Fed. R. Civ. P. 16.......................................................................................................................7

Plaintiffs LEGO A/S, LEGO Systems, Inc., and LEGO Juris A/S (collectively, "the LEGO Group") respectfully submit this Opposition to Zuru's Motion for Leave to (1) File Supplemental Counterclaims and (2) Modify Scheduling Order (ECF Nos. 368, 368-1) (the "Motion").

## **INTRODUCTION**

Nearly 2.5 years ago (and 5 years after commencement of this litigation) Zuru chose to "design" ten additional "version[s] of its MAX Build More figurines relying on theories that have already been rejected." ECF No. 139 at 27. Confronted with yet *another* failed attempt to argue that miniscule changes to its enjoined figurines suffice to avoid infringement, Zuru seeks *another* re-do. This time, Zuru argues it should be permitted to (1) "supplement" its counterclaims due to an "event" that occurred after initial pleadings (namely, Zuru's own decision to "design" more infringing figurines), (2) re-open discovery, and (3) re-do summary judgment briefing. But since the time Zuru filed the Motion, this case has been almost fully resolved. That is, Zuru has no live counterclaims to supplement.

**The Motion should be denied as moot**. Following a full round of briefing (more aptly characterized as re-briefing), and submission of expert opinions, this Court already found that the third-generation figurines "are subject to the Preliminary Injunction Order." ECF No. 344 at 4. After a limited remand for further clarification followed by a supplemental order, the Second Circuit concluded that it "lack[ed] appellate jurisdiction because the district court correctly determined that the Third-Generation figurines fall within the existing injunction both because of their substantial similarity to, and likelihood of confusion with, [the LEGO Group]'s Minifigure." *Lego A/S v. Zuru Inc.,* No. 24-CV-00634, 2025 WL 3537350, at *2 (2d Cir. Dec. 10, 2025). When the Court eventually enters a permanent injunction, it will likewise enjoin any figurine that is

substantially or confusingly similar to the LEGO Minifigure figurine copyrights and trademark (including the third-generation figurines, and any subsequent infringing iteration).

Moreover, the Court recently granted the LEGO Group's motion for summary judgment, including as to Zuru's counterclaims for a declaratory judgment of non-infringement. In doing so, the Court rejected the same arguments that Zuru previously made regarding the third-generation figurines. In other words, the issues central to the proposed counterclaims have already been decided.

**The Motion also independently fails**. *First*, Zuru was not diligent, and indeed unduly delayed, bringing this Motion by first waiting five years to propose the third-generation figurines, and then waiting another nearly 2.5 years to bring the Motion. *Second*, allowing Zuru to supplement its counterclaims and re-open discovery and summary judgment briefing at the thirteenth-hour would unquestionably prejudice the LEGO Group by unnecessarily prolonging this litigation and requiring the LEGO Group to incur additional time and expense on redundant briefing. *Third*, Zuru filed the Motion for the tactical purpose of re-litigating the same issues that have already been argued and decided in contravention of both the Court's notice requirement and judicial economy.[1] *Fourth*, Zuru's proposed counterclaims are futile in light of the Second Circuit's order and the Court's decision on the parties' cross motions for summary judgment, as the third-generation figurines present no new issues.

## FACTUAL BACKGROUND

The Court has already been apprised of the key facts when considering the LEGO Group's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 7, 7-1), Emergency

---

[1] This Motion is but another example in a long line demonstrating how Zuru's tactics have made this an exceptional case. 15 U.S.C. § 1117(a).

-3-

Motion for Contempt (ECF No. 114), Motion for Partial Summary Judgment (ECF No. 241, 242), Opposition to Zuru's Motion for Summary Judgment (ECF No. 264), Opposition to Zuru's Motion to Dissolve (ECF No. 288), and Emergency Motion for Temporary Restraining Order (ECF Nos. 306, 307). The LEGO Group provides a brief overview of the history pertinent to this Motion.

A.    **The Preliminary Injunction, Contempt Order, and Cross Motions for Summary Judgment**

Following Zuru's launch of its MAX Build More figurine (the "MAX Figurine"), the LEGO Group commenced this lawsuit on December 13, 2018, and immediately moved for a temporary restraining order and preliminary injunction. ECF Nos. 1, 7.[2] On July 8, 2019, the Court granted the LEGO Group's motion for preliminary injunction. The Federal Circuit affirmed. *LEGO A/S v. ZURU Inc.*, 799 F. App'x 823, 831-32 (Fed. Cir. 2020).[3]

Zuru then launched a "redesigned" MAX figurine that was virtually indistinguishable from the original MAX Figurine (the "Redesigned Figurine"). On November 20, 2019 the Court granted the LEGO Group's Motion for Contempt. ECF No. 139. The Court also concluded that any future

---

[2] The LEGO Group's Verified Complaint sought, *inter alia*: "[A] temporary restraining order, preliminary and permanent injunction restraining ZURU, its employees, and all persons in active concert or participation with ZURU or with any of the foregoing from: (a) manufacturing, selling, offering for sale, displaying or authorizing the sale of products, including the Infringing Products, containing unauthorized reproductions of the copyrighted and trademarked Minifigure figurine, ***including any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks***." ECF No. 1 at 53 (emphasis added).

[3] The preliminary injunction enjoined Zuru from: [M]anufacturing, selling, offering for sale, distributing, displaying or authorizing the sale of products, including the Infringing Products, containing unauthorized reproductions of the copyrighted and trademarked Minifigure figurine, ***including any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks.*** ECF No. 87 at 2 (the "Preliminary Injunction") (emphasis added).

attempts to "redesign" Zuru's infringing figurines would need to be subject to advanced disclosure and review.[4]

On March 9, 2022, the parties filed cross Motions for Summary Judgment as to all of the LEGO Group's active claims and Zuru's defenses (ECF No. 237, 238, 241, 242). Zuru moved to dissolve the Preliminary Injunction on March 21, 2022. ECF No. 252, 253 ("Motion to Dissolve"). On March 31, 2023, the Court denied Zuru's Motion to Dissolve. ECF No. 297.

## B.      The Third Generation Figurines

On November 17, 2023, with the parties' summary judgment briefs under submission, Zuru filed a notice of its intent to sell any of ten barely-altered figurines, which it called the "Third-Generation Figurines." ECF No. 305. Pursuant to the Notice Requirement, the LEGO Group promptly filed an emergency motion for temporary restraining order to enjoin Zuru from launching the Third-Generation Figurines. ECF No. 306, 307.

After considering the parties' submissions, the Court held that Zuru's Third-Generation Figurines were subject to, and barred from distribution by, the existing preliminary injunction. ECF No. 344 at 4. In its oral and written rulings, the Court explained the contempt order and Notice Requirement in detail. The Court explained that it intentionally did not mention a preliminary injunction in the contempt order because the Court did not contemplate "a full-blown relitigation with respect to whether injunctive relief should be ordered with respect to the proposed redesign[.]" 02/02/2024 Oral Argument on Plaintiffs' Emergency Motion for Temporary

---

[4] "[I]t is appropriate to require ZURU, Inc. to file a notice with the court, which shall include detailed information about any such figurine, at least 30 days prior to manufacturing, selling, offering for sale, distributing, displaying, or authorizing the sale of any figurine in its MAX Build More product line or in any replacement for the MAX Build More product line. This will allow sufficient time for the court to receive and act on any application for a temporary restraining order." ECF No. 139 at 26 (the "Notice Requirement").

Restraining Order Tr. (ECF No. 347 at 18) ("Emergency TRO Tr.") ("So to the extent we're talking about a big redo of things that just isn't consistent with my understanding…"). Rather, the question to be resolved was "whether the proposed redesigned products were covered by the injunction or not." Emergency TRO Tr. at 18. The Court found that they were.

Zuru appealed the Court's order on the LEGO Group's emergency motion for temporary restraining order, arguing that the Second Circuit should apply *de novo* review in distinguishing interpretation from modification of a preliminary injunction for purposes of assessing appellate jurisdiction. Brief for Defendant-Counter-Claimant-Appellant at 40-41, *Lego A/S. v. Zuru Inc.,* No. 24-634 (2d Cir. Dec. 10, 2025), Dkt. No. 32.1. Zuru explained that "[the] Court's determination of whether a district court modified or clarified an earlier injunction is inextricably tied to an assessment of the underlying merits." *Id.* at 41.

On March 26, 2025, the Second Circuit ordered a limited remanded for the Court to articulate its reasoning. *Lego A/S v. Zuru Inc.*, No. 24-634, 2025 WL 915027, at *4 (2d Cir. Mar. 26, 2025) (citing *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994)).

On May 28, 2025, the Court issued a comprehensive, 29-page supplemental opinion providing its assessment of whether the Third-Generation figurines are substantially similar to, or likely to be confused with, the LEGO Minifigure figurine. *See* ECF No. 363. With respect to copyright infringement, the Court concluded that the two works were substantially similar as to their protectable elements and adhered to the conclusion that "the Third-Generation Figurines fall within the scope of the preliminary injunction order." *Id.* at 10-15, 29. With respect to trademark infringement, the Court found that the Third-Generation Figurines are likely to cause confusion with the LEGO Group's Minifigure figurine trademark, and therefore "the Third-Generation Figurines fall within the scope of the preliminary injunction." *Id*. at 15-29.

On December 10, 2025, the Second Circuit issued a Summary Order concluding that it "lack[ed] appellate jurisdiction because the district court correctly determined that the Third-Generation figurines fall within the existing injunction both because of their substantial similarity to, and likelihood of confusion with, [the LEGO Group]'s Minifigure." *Lego A/S*, 2025 WL 3537350, at *2.

**C.      The Court Grants the LEGO Group's Motion for Summary Judgment**

On March 20, 2026, the Court issued a notice providing that, in the interest of judicial economy, the Court would reset the deadline for the LEGO Group's response to Zuru's Motion after the Court filed its ruling on the parties' cross-motions for summary judgment. ECF No. 369. On April 2, 2026, the Court granted the LEGO Group's motion for summary judgment on its copyright and trademark infringement claims, as well as Zuru's counterclaims and affirmative defenses. ECF No. 370 ("Summary Judgment") at 176-77. The Court denied Zuru's motion for summary judgment. *Id.*

## LEGAL STANDARD

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Where . . . the Plaintiff seeks to add related claims against the same defendant, the analysis under Rule 15(a) and Rule 15(d) is the same." *Cummings-Fowler v. Suffolk Cnty. Cmty. Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012); *accord Rivers v. N.Y.C. Hous. Auth.*, No. 2011-CV-05065, 2014 WL 1311557, at *3 (E.D.N.Y. Mar. 31, 2014) ("Thus, aside from the additional requirement of a connection between the supplemental and original pleadings, the standards for examining a Rule 15(d) motion to

-6-

supplement are essentially the same as for a Rule 15(a) motion to amend."), *aff'd as modified*, 2014 WL 12829494 (E.D.N.Y. Nov. 17, 2014).[5]

"Leave to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *G.L.M. Sec. & Sound, Inc. v. LoJack Corp.,* 667 F. App'x 339, 341 (2d Cir. 2016) (citation modified); *accord Shubert v. Town of Glastonbury*, No. 3:18-CV-00112, 2020 WL 6395472, at \*1 (D. Conn. Nov. 2, 2020) ("The relevant considerations under Rule 15 are whether the proposed amendment would be futile, whether the motion to amend was filed in bad faith, whether the requested amendment will cause undue delay, and whether it would unduly prejudice the nonmoving party.")

Rule 16(b) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[W]here a party's motion to amend would require altering a court's scheduling order, the party must satisfy both Federal Rules of Civil Procedure 15 and 16 to be permitted to amend." *Int'l Techs. Marketing, Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 43 (2d Cir. 2021) (citation modified); *accord Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). "[A] finding of 'good cause' depends on the diligence of the moving party." *Parker*, 204 F.3d at 340. "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir. 2007).

---

[5] "Rule 13(e) provides that a claim which either matured or was acquired by the pleader after serving a pleading, may, with the permission of the court, be presented as a counterclaim by supplemental pleading. Rule 13 must be read in conjunction with Rule 15 of the Federal Rules of Civil Procedure." *Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, No. 99-CV04677, 2001 WL 1702151, at \*4 (S.D.N.Y. Jan. 11, 2002) (citation modified).

## ARGUMENT

### I.    ZURU'S MOTION SHOULD BE DENIED AS MOOT

#### A.    Both This Court and The Second Circuit Found the Third Generation Figurines are Covered by the Preliminary Injunction

The Preliminary Injunction bars Zuru from "manufacturing, selling, offering for sale, distributing, displaying or authorizing the sale of products . . . *including any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks.*" Preliminary Injunction at 2 (emphasis added). That is, *any* infringing figurine created by Zuru would fall within the scope of the injunction. This includes the Third-Generation Figurines. Indeed, the Second Circuit already found that "the Third-Generation figurines fall within the existing injunction both *because of their substantial similarity to, and likelihood of confusion with, [the LEGO Group]'s Minifigure*." *LEGO A/S*, 2025 WL 3537350, at \*2 (emphasis added).

When the Court eventually enters a permanent injunction, Zuru will likewise be permanently enjoined from "manufacturing, selling, offering for sale, distributing, displaying or authorizing the sale of products . . . *including any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks.*" Accordingly, any permanent injunction will enjoin Zuru's Third-Generation Figurines and any subsequent iteration that is substantially and confusingly similar to the Minifigure figurine copyrights and trademark (*e.g.,* a hypothetical infringing fourth or fifth generation MAX figurine).

If Zuru requires clarification regarding an eventual permanent injunction as applied to its subsequent designs it can raise that issue in the post-judgment context (*e.g.,* on a motion for clarification of the injunction or a different procedural mechanism implemented by the Court). *See, e.g., Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*, No. 22-2106, 2024 WL 2712636, at

*3-4 (2d Cir. May 28, 2024) (considering denial of motion for clarification of the permanent injunction seeking a ruling that a packaging design was consistent with the permanent injunction). However, the fact that this litigation includes *any* infringing figurine, including the Third Generation Figurines, does not entitle Zuru to supplement its pleadings (and re-open discovery and summary judgment briefing) every time it makes a miniscule change, thereby forcing the parties to endlessly re-litigate the same issues. *See Klein v. PetroChina Co.*, 644 F. App'x 13, 15 (2d Cir. 2016) (affirming denial of Rule 15(d) motion and noting "the defendants should not have 'to play whack-a-mole with this case' 'every time someone is indicted'").

### B. The LEGO Group Already Prevailed on Summary Judgment, and the Third Generation Figurines Present No New Issues

Zuru has no live counterclaims to supplement. The Court granted the LEGO Group's motion for summary judgment on its copyright and trademark infringement claims, as well as Zuru's counterclaims for declaratory judgment of non-infringement and invalidity of the Minifigure figurine copyrights and trademark. *See* Summary Judgment at 176-77.

The Court's summary judgment decision already decided the issues central to Zuru's Proposed Counterclaims. That is, the arguments Zuru previously raised regarding the Third-Generation Figurines have now been rejected on summary judgment. For example, the Court found that (1) there is no support in the record for the proposition that there are unoriginal elements of the Minifigure figurine that need to be subtracted in conducting the substantial similarity inquiry, and (2) the only functional elements of the Minifigure figurine are the stud projection on the top of the head, the inside radius of the c-shape hands, and the holes at the base of the feet and back of the legs. Summary Judgment at 52-55, 59. Critically, the Court also rejected Zuru's piecemeal approach to assessing similarity. *Id.* at 63 ("Loetz's methodology for conducting the more discerning inquiry is contrary to the manner in which that inquiry must be conducted."), 129

("However, the approach taken by Loetz is not a reliable foundation for his opinions, and they cannot be considered because '[w]hen evaluating the similarity of marks, courts consider the overall impression created by a mark. Each mark must be compared against the other as a whole; juxtaposing fragments of each mark does not aid in deciding whether the compared marks are confusingly similar.") (citation omitted).[6] This is the law of the case. And, the Motion specifically suggests that the parties convert their prior expert declarations regarding the Third Generation Figurines into expert reports (Motion at 16)[7], which would include Mr. Loetz's now-rejected piecemeal comparison analysis. Because the Court has already decided these issues (and, indeed, *excluded* the opinions of Mr. Loetz), the Motion should be denied as moot.[8]

## II.    ZURU'S MOTION FAILS

### A.    Zuru Must Demonstrate Good Cause For Its Request To File the Proposed Counterclaims And Modify The Schedule

Zuru must demonstrate good cause for the Motion because the requested relief would require an amendment to the scheduling order. "Where a scheduling order has been entered, the lenient standard under Rule 15(a) must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Morritt v. Stryker Corp.*, 973 F. Supp. 2d 177, 182–83 (E.D.N.Y. 2013) (citation modified); *accord Shubert*, 2020 WL 6395472, at *1 (applying Rule 16(b) standard to a Rule 15(d) motion). Despite

---

[6] Zuru advanced the very same piecemeal comparison argument in its briefing regarding the Third Generation Figurines. *E.g.,* ECF No. 313 at 25 ("[T]he heads are all different (TLG—perfectly cylindrical with a 'stud' on the top'; Zuru—oblong with a 'chin,' protruding ears, and no stud); the torsos are different (TLG—an angular trapezoid Zuru—a variety of rounded, more human-like shapes . . . and the feet are different (TLG—square; Zuru—rounded)."

[7] Page numbers of Zuru's Motion refer to page numbers at the bottom of each page of the memorandum, and not ECF numbers at the top of the page.

[8] At a minimum, Zuru's proposed supplemental counterclaims are futile in light of the Court's summary judgment decision. *Infra* pp. 16-18.

ostensibly treating its request for leave to supplement as separate from its request to re-open discovery and summary judgment briefing, Zuru also claims that allowing discovery concerning the Third-Generation Figurines is "required." Motion at 17; *see also* Motion at 18, n.4 (claiming that, in the absence of re-opened discovery or summary judgment briefing, Zuru's non-infringement claims regarding the Third-Generation Figurines "would need to be resolved at a trial.") Accordingly, Zuru's requests must be considered together.

The following deadlines have long passed: (1) deadline to amend pleadings, (2) deadline to complete fact discovery, (3) deadline to complete expert discovery, and (4) deadline to file dispositive motions. *See* ECF Nos. 8, 75, 222, 225, 227. Indeed, the Court already decided the parties' cross motions for summary judgment. Because Zuru's requested relief would require an amendment to the scheduling order, it must be analyzed under both Rules 15 and 16(b).

**B.      Zuru Cannot Demonstrate Good Cause For Its Request To File the Proposed Counterclaims And Modify The Schedule**

"The 'primary consideration' in a good cause analysis is 'whether the moving party can demonstrate diligence.'" *Morritt*, 973 F. Supp. 2d at 182 (quoting *Kassner*, 496 F.3d at 244). "Likewise, 'considerations of undue delay, bad faith, and prejudice'—considerations implicated by, if not subsumed in, the diligence inquiry—are the 'touchstones of a district court's discretionary authority' under Rule 15(a)." *Id.* at 182-83 (quoting *Barrows v. Forest Lab'ys, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984)); *see also Shubert*, 2020 WL 6395472, at *1 ("The relevant considerations under Rule 15 are whether the proposed amendment would be futile, whether the motion to amend was filed in bad faith, whether the requested amendment will cause undue delay, and whether it would unduly prejudice the nonmoving party."). Each of the Rule 15 and 16 considerations weigh in favor of denying the Motion.

-11-

### 1.    Zuru Was Not Diligent and Unduly Delayed Bringing the Motion

Zuru *chose* to create the Third-Generation Figurines in late 2023, which are merely CAD drawings. That is, Zuru unilaterally manufactured the "event" giving rise to the Proposed Counterclaims *after* the close of discovery, *after* the parties fully briefed summary judgment, and *after* the case had been pending for 5 years.[9] This is not a situation in which additional facts or events relating to an underlying dispute between the parties happened to have occurred after initial pleadings (or were otherwise outside of the moving party's control), necessitating a supplement. *E.g., Stein v. Janos*, 269 F. Supp. 2d 256, 263 (S.D.N.Y. 2003) (seeking to supplement complaint to add a First Amendment claim because the defendants fired him for filing the lawsuit); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (seeking to supplement complaint to add a cause of action for unlawful retaliation); *Kahn v. Gen. Motors Corp.*, 865 F. Supp. 210, 215 (S.D.N.Y. 1994) ("Kahn merely seeks to supplement his complaint to allege continuing infringements by changing a date."); *Aktiebolag v. Andrx Pharms., Inc.*, 695 F. Supp. 2d 21, 25 (S.D.N.Y. 2010) ("Astra contends that it could not have pled that Andrx manufactured, used and offered to sell validation batches because Andrx had not yet manufactured the batches at the time of Astra's pleadings."). In other words, "this is a new development which was [Zuru]'s own making." *Sohk Sportswear, Inc. v. K.S. Trading Corp.,* No. 02-CV-02016, 2003 WL 22208352, at *3 (S.D.N.Y. Sept. 23, 2003) (denying Rule 15(d) motion and noting that plaintiff waited until "after fact discovery in this action was complete, to even attempt to register the additional figures, and has not proffered any plausible reason for the delay.").

---

[9] For avoidance of doubt, Zuru did not engage in a legitimate creative design process that spanned a measurable time period and resulted in the final Third-Generation Figurines at the end of 2023. To the contrary, "Zuru did not even design . . . its Third-Generation Figurines until late 2023." Motion at 10.

In any event, Zuru was aware that there was a dispute between the parties regarding the Third-Generation Figurines as early as 2023. *See* Motion at 10 ("Likewise, the parties' dispute as to whether the Third-Generation Figurines do or do not infringe T[he LEGO Group]'s Minifigure copyright or trade-dress rights did not arise until late 2023…"). Yet it waited 2.5 years to file the Motion.[10] Zuru offers no credible justification for this delay, much less an explanation sufficient to establish good cause. Indeed, courts routinely find undue delay where the moving party seeks to amend or supplement pleadings after the close of discovery or while summary judgment is pending, let alone after summary judgment is *decided. E.g., Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir. 2003) ("[W]hen the motion was filed, discovery had been completed and a summary judgment motion was pending. On this record we cannot say that the district court abused its discretion in denying the plaintiffs' motion to amend."); *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir. 2007) ("Plaintiffs sought to amend their complaint after an inordinate delay. By that time, discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint."); *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 370 (S.D.N.Y. 2009) (denying Rule 15(d) motion where discovery had closed and permitting defendant to file another counterclaim "would unduly delay resolution of this case"), *aff'd*, 379 F. App'x 4 (2d Cir. 2010); *Rivers*, 2014 WL 1311557, at *5; *Cerilli v. Rell*, No. 3:08-CV-00242, 2010 WL 1330998, at *3 (D. Conn. Mar. 31, 2010) (denying Rule 15(d) motion where the deadline for completing discovery had expired and the parties had filed cross motions for summary judgment.).

---

[10] Zuru's appeal does not justify its delay as the Second Circuit lacked jurisdiction to hear it, and, in any event, the outcome was never going to resolve the parties' disagreement as to whether the Third-Generation Figurines infringe. *Cf. Aktiebolag,* 695 F. Supp. 2d at 30 (finding no undue delay where the motion for leave was brought after an appeal that could have eliminated the basis for the damages claim entirely).

### 2.    Zuru's Request Will Prejudice the LEGO Group

"A proposed amendment is especially prejudicial when discovery had already been completed and the non-movant had already filed a motion for summary judgment." *G.L.M. Sec. & Sound*, 667 F. App'x at 341 (citation modified); *accord Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 460, 462 (S.D.N.Y. 2007) ("This Circuit has consistently found prejudice and denied amendments where discovery has already been completed."). This case has almost entirely concluded. Indeed, discovery closed over 4 years ago, and summary judgment has already been decided.

Requiring the LEGO Group to incur expenses associated with additional discovery and summary judgment briefing at this late stage is unfairly prejudicial and will unnecessarily delay resolution of this matter.[11] *See McCarthy*, 482 F.3d at 202 (affirming denial of leave to amend where "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint."); *Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) ("As Krumme's case was near resolution and discovery had been completed, the district court acted well within its discretion in concluding that WestPoint's new counterclaims would prejudice Krumme."); *Classicberry Ltd. v. Musicmaker.com, Inc.*, 48 F. App'x 360, 362 (2d Cir. 2002) ("Furthermore, because defendants made their motion to amend after discovery had closed and plaintiffs had moved for summary judgment, the amendment would have been 'especially prejudicial.'"); *Ansam Assocs. Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir. 1985) ("Moreover, permitting the proposed amendment would have been especially

---

[11] In evaluating prejudice, courts consider whether the amendment will "(1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (citation modified). "Courts also consider the particular procedural posture of the case." *Id.*

prejudicial given the fact that discovery had already been completed and Cola had already filed a motion for summary judgment."); *Morritt,* 973 F. Supp. 2d at 183 ("Despite plaintiff's protestations to the contrary, permitting amendment now would be prejudicial given the fact that discovery has already been completed and defendants have already filed a motion for summary judgment." (citation modified)); *Rivers*, 2014 WL 1311557, at *5 ("[S]ince discovery had closed and a briefing schedule has been set for defendants' summary judgment motions, permitting supplementation would unduly delay this litigation and prejudice defendants.").

Zuru's request is especially prejudicial because the parties *already* introduced expert opinions concerning the Third-Generation Figurines in connection with the LEGO Group's emergency motion for temporary restraining order. Far from "promot[ing] judicial efficiency" (Motion at 13), Zuru's proposed additional expert discovery would be cumulative, duplicative, and solely in furtherance of Zuru's transparent goal of having another bite at the summary judgment apple.[12]

### 3.     Zuru Acted in Bad Faith

"A finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith." *Multi-State P'ship for Prevention, LLC v. Kennedy,* No. 24-CV-00013, 2026 WL 121081, at *4 (E.D.N.Y. Jan. 16, 2026) (citation modified). Zuru's Motion is an attempt to re-litigate the same issues it has lost several times, including most recently on summary judgment. The parties briefed the issue of whether Zuru's miniscule changes to its enjoined figurines suffice to avoid infringement no less than 4 times. The Court already

---

[12] It bears noting that while Zuru proposes additional discovery and summary judgment briefing concerning the Third-Generation Figurines, its proposal does *not* contemplate discovery relating to Zuru's "design" process, which would presumably only bolster the LEGO Group's infringement arguments. Zuru's request for certain "limited" discovery is therefore prejudicial for the additional reason that it is self-serving and one-sided.

rejected the argument. Yet Zuru now seeks to rehash the same arguments, again, by re-opening summary judgment briefing.

Zuru effectively claims that the Notice Requirement—implemented as a result of its "demonstrated lack of commitment" to compliance (ECF No. 139 at 27)—permits it to propose a barely-altered "new design", requires the LEGO Group to move for a temporary restraining order and defend a meritless appeal, and then allows Zuru to supplement its counterclaims and re-open discovery and summary judgment briefing at the thirteenth hour to re-litigate the same issues that have been argued (and decided) at every stage of this case. Under Zuru's view of the Notice Requirement, this litigation would never end. Zuru's efforts to flout the intention behind the Notice Requirement and needlessly drive-up litigation costs evidences its bad faith, and, indeed, the exceptional nature of this case. 15 U.S.C. § 1117(a).

### 4.    Zuru's Proposed Counterclaims are Futile

Zuru's Proposed Counterclaims are futile. *First*, the Second Circuit already found "the district court correctly determined that the Third-Generation figurines fall within the existing injunction both ***because of their substantial similarity to, and likelihood of confusion with, [the LEGO Group]'s Minifigure***." *Lego A/S,* 2025 WL 3537350, at *2 (emphasis added). Zuru's Motion should be denied for this reason alone. *Second*, application of the summary judgment standard to Zuru's Proposed Counterclaims necessitates a finding that the Proposed Counterclaims are futile.

"Usually, a proposed amendment is futile if it could not survive a Rule 12(b)(6) motion to dismiss for failure to state claim." *Alexander v. Westbury Union Free Sch. Dist.,* 829 F. Supp. 2d 89, 119 (E.D.N.Y. 2011). "However, where a motion to amend is filed following a motion for summary judgment, 'even if the amended complaint would state a valid claim on its face,' leave

to amend may be denied where 'the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law.'" *Morritt,* 973 F. Supp. 2d at 183; *see also Smith v. P.O. Canine Dog Chas*, No. 02-CV-06240, 2004 WL 2202564, at *12 (S.D.N.Y. Sept. 28, 2004) ("Where, however, a summary judgment motion has been made and evidence outside the pleadings has already been submitted, the court must determine whether the amendment would be futile under the summary judgment standard."); *Engles v. Jones*, 405 F. Supp. 3d 397, 403 (W.D.N.Y. 2019) ("[W]here, as in this case, a motion for leave to amend is filed after the close of discovery and after decision on summary judgment, the Court may apply the standard applicable on a motion for summary judgment.") (citation modified)).

Because Zuru filed its Motion long after summary judgment briefing, and the Court has already decided the parties' cross motions for summary judgment, the Court should apply the summary judgment standard in assessing whether the Proposed Counterclaims are futile. The parties already briefed the issue of whether the Third-Generation Figurines infringe in connection with the LEGO Group's emergency motion for temporary restraining order. Both parties submitted evidence outside of the pleadings (*i.e.,* photographs, documents, and expert declarations) in connection with that briefing. There is no need for the parties to take duplicative expert discovery and re-brief the same issues on the same record. *See* Motion at 17 (acknowledging that the parties have already "extensive[ly] brief[ed]" the Third-Generation Figurines).

Application of the summary judgment standard to assess futility is particularly apt here because the Court already rejected Zuru's counterclaims for declaratory judgment of non-infringement when it granted the LEGO Group's motion for summary judgment. Zuru raised the same arguments in its opposition to the LEGO Group's emergency motion for temporary

-17-

restraining order (concerning the Third-Generation Figurines) that it raised in summary judgment briefing (concerning the original MAX Figurines and Redesigned Figurines). The Court's summary judgment decision therefore resolved the issues central to the Proposed Counterclaims. Moreover, "[w]hen a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991)); *see also Andy Warhol Found. for Visual Arts*, *Inc. v. Goldsmith*, 11 F.4th 26, 53 (2d Cir. 2021) ("Though substantial similarity often presents a jury question, it may be resolved as a matter of law where access to the copyrighted work is conceded, and the accused work is so substantially similar to the copyrighted work that reasonable jurors could not differ on this issue." (citation modified)), *aff'd,* 598 U.S. 508 (2023); *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 609 (D. Conn. 2019) ("Although the question of substantial similarity is usually one of fact, it is entirely appropriate for a district court to resolve substantial similarity as a matter of law if the similarities are so striking that no reasonable juror could find that the alleged infringer did not copy the plaintiff's protected works."). The Court can undertake (and, indeed, has already undertaken) a visual comparison of the Third-Generation Figurines to determine that they are substantially and confusingly similar to the Minifigure figurine copyrights and trademark as a matter of law. This visual comparison is bolstered by the LEGO Group's expert opinion concerning the Third-Generation Figurines, which is already in the record. The Court should apply the summary judgment standard and determine the Proposed Counterclaims are futile.

## CONCLUSION

For the foregoing reasons, the LEGO Group respectfully requests that the Court deny

-19-

Zuru's Motion for Leave to (1) File Supplemental Counterclaims and (2) Modify Scheduling Order.

Dated: May 4, 2026                          Respectfully submitted,

                                            By: */s/ Elizabeth A. Alquist*
                                                    Elizabeth A. Alquist (ct15643)
                                                    Andraya Pulaski Brunau (ct29715)
                                                    Juliana M. Campochiaro (ct31405)
                                                    Day Pitney LLP
                                                    Goodwin Square
                                                    225 Asylum Street
                                                    Hartford, CT 06103
                                                    Phone: (860) 275-0100
                                                    Fax: (860) 275-0343
                                                    eaalquist@daypitney.com
                                                    abrunau@daypitney.com
                                                    jcampochiaro@daypitney.com

                                            *Attorneys for Plaintiffs LEGO A/S, LEGO
                                            Systems, Inc., and LEGO Juris A/S*

## CERTIFICATION

I hereby certify that on May 4, 2026, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Elizabeth A. Alquist*
Elizabeth A. Alquist

124965736