**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LEGO A/S; LEGO SYSTEMS, INC.; and LEGO JURIS A/S,<br><br>Plaintiffs,<br>v.<br><br>ZURU INC.,<br><br>Defendant. | x<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | Civil No. 3:18-cv-2045 (AWT) |

**RULING ON ZURU'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COUNTERCLAIMS AND MODIFY SCHEDULING ORDER**

Defendant ZURU Inc. ("ZURU") has moved pursuant to Federal Rules of Civil Procedure 13(e), 15(d), and 16(b) for leave to file supplemental counterclaims and to modify the scheduling order in this case to permit discovery and supplemental summary judgment briefing related to ZURU's "Third Generation Figurines." Plaintiffs LEGO A/S, LEGO Systems, Inc., and LEGO Juris A/S (collectively, "LEGO") object. For the reasons set forth below, ZURU's motion is being denied.

## I. BACKGROUND

The underlying facts and procedural history of this case are extensive and only what is needed to explain the decision on the instant motion is set forth below.

LEGO's Verified Complaint claims, inter alia, that ZURU's

First Generation MAX Figures[1] infringe on the copyright and trademark rights of LEGO's Minifigure Figurine, i.e. the Asserted Copyrights and the Asserted Trademark. The Verified Complaint requests a judgment, inter alia, that "ZURU has infringed the Minifigure Copyrights" and that "ZURU has infringed the Minifigure Trademarks." Complaint, ECF No. 1 at 53.

LEGO also requested a

> a temporary restraining order, preliminary and permanent injunction restraining ZURU, its employees, and all persons in active concert or participation with ZURU or with any of the foregoing from:
>
> a. manufacturing, selling, offering for sale, displaying or authorizing the sale of products, including the Infringing Products, containing unauthorized reproductions of the copyrighted and trademarked Minifigure figurine, including any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks;

Id.

The court issued a Temporary Restraining Order, ECF No. 19, on December 14, 2018. On July 8, 2019 the court issued a Preliminary Injunction which provided, inter alia, that it was

> **FURTHER ORDERED** that the defendant, ZURU Inc., together with its agents, servants, employees, successors and assigns, and all those in active concert or participation with them, hereby are, and using defined terms as they appear in the plaintiffs' memorandum of law (ECF No. 7-1), RESTRAINED AND ENJOINED from
>
> a. manufacturing, selling, offering for sale, distributing, displaying or authorizing the sale of

[1] Except when quoting another document, the court uses in this ruling the terminology used in the Ruling on Cross-Motions for Summary Judgment. See Lego A/S v. Zuru Inc., 827 F. Supp. 3d 313 (D. Conn. 2026).

> products, including the Infringing Products, containing unauthorized reproductions of the copyrighted and trademarked Minifigure figurine, including any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks[.]

Prelim. Inj., ECF No. 87 at 1-2.

In December 2018, after the issuance of the Temporary Restraining Order, ZURU began the process of redesigning its MAX Figures. By March 2019 ZURU had developed the Second Generation MAX Figures. By August 2019, the Second Generation Max Figures were available for sale on Walmart.com and in Walmart retail locations. ZURU filed a Motion for Order that Redesigned Figurines Do Not Violate the Preliminary Injunction, ECF No. 112, and LEGO filed an Emergency Motion for Contempt, ECF No. 114.

The court denied ZURU's motion and granted LEGO's Motion for Contempt. With respect to LEGO's burden to establish that the order ZURU had failed to comply with is clear and unambiguous, the court concluded:

> The language of the Preliminary Injunction Order is clear and unambiguous. The prohibition extends to "any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks." In its opposition, ZURU, Inc. states in a footnote that "[t]he boundaries of the terms 'substantially similar' and 'likely to be confused with' in the Preliminary Injunction are ambiguous." ZURU, Inc.'s Opp'n to Pl.'s Mot. for Contempt at 2 n.1, ECF No. 124. It is unclear exactly what point ZURU, Inc. is making in this footnote, but, in any event, the use of these terms in the

> Preliminary Injunction Order is based on the discussion and analysis in the Ruling, where these terms are elaborated upon in detail. Also, at the hearing, ZURU, Inc. did not point to any ambiguity in the terms of the Preliminary Injunction Order; rather it argued, with respect to the Redesigned Figurines, that "it is a figure that ZURU does not believe is substantially similar to the minifigure copyright or likely to be confused with the minifigure trademark[.]

Ruling on Mot. for Contempt, ECF No. 139 at 8-9.

LEGO also sought an amendment to the Preliminary Injunction, and the court granted its request by adding the following language:

> During the pendency of this case and until further order of the court, ZURU, Inc. must file a notice with the court, which shall include detailed information about any such figurine, at least 30 days prior to manufacturing, selling, offering for sale, distributing, displaying, or authorizing the sale of any figurine in its MAX Build More product line or in any replacement for the MAX Build More product line[.]

Ruling on Mot. for Contempt, ECF No. 139 at 28-29.

In November 2023, ZURU filed a notice of intent to manufacture its "Third Generation Figurines," contending that the Third Generation Figurines "fall outside the bounds of any protection that [LEGO]'s asserted minifigure ("Minifigure") copyrights and trademarks afford to [LEGO][.]" Def. Not. of Intent to Manufacture and Sell Non-Infringing Figs., ECF No. 305 at 2.

LEGO promptly moved for a Temporary Restraining Order restraining ZURU from "manufacturing, selling, offering for

sale, distributing, displaying or authorizing the sale of the ten figurines proposed by ZURU . . . in its Notice of Intent to Manufacture and Sell Non-Infringing Figurines (ECF No. 305) . . . and confirming that the [Third Generation Figurines] are subject to the Preliminary Injunction." Pls. Emerg. Mot. for TRO, ECF No. 306 at 1.

On February 5, 2024, the court issued an order (ECF No. 344) finding that the Third Generation Figurines are subject to the Preliminary Injunction. ZURU appealed and the case was remanded by the Court of Appeals.

The Mandate (ECF No. 361), dated April 16, 2025, stated:

> We therefore find that a remand pursuant to this Court's procedure in United States v. Jacobson is appropriate for the district court to supplement the record by providing its assessment of whether the Third-Generation figurines are substantially similar to or likely to be confused with Lego's Minifigure. 15 F.3d 19, 22 (2d Cir. 1994). In particular, we instruct the district court on remand to apply the more discerning observer test in its assessment of substantial similarity.
>
> . . . .
>
> Because the district court did not perform any analysis in applying the preliminary injunction to the Third-Generation figurines, we cannot discern whether its ruling was based on unprotectable elements of Lego's Minifigure. Accordingly, as stated above, we remand the case to the district court pursuant to Jacobson. See Jacobson, 15 F.3d at 22. On remand, the district court must use the more discerning observer standard stated above to assess whether the Third-Generation figurines are substantially similar to Lego's Minifigure so as to fall within the scope of the preliminary injunction order. In doing so, it must not base its finding of substantial similarity on unprotectable elements of the Minifigure. The

> court must also assess whether the Third-Generation figurines are likely to be confused with Lego's Minifigure. See [Vans, Inc. v. MSCHF Product Studio, Inc., 88 F.4th at 135-36 (2d Cir. 2023)].

Mandate at 7, 10-11.

On May 28, 2025, in accordance with the Mandate, the court issued a Supplement to Order Re Plaintiffs' Emergency Motion for Temporary Restraining Order ("Supplement to Order") (ECF No. 363). In accordance with the Mandate, the court set forth its analysis with respect to substantial similarity and likelihood of confusion.

In the Supplement to Order, the court noted that in the briefing for LEGO's motion for a temporary restraining order with respect to the Third Generation Figurines "both sides incorporated by reference the record from the preliminary injunction proceedings and their submissions in connection with their cross-motions for summary judgment." Supp. to Or., ECF No. 363 at 3. The court stated:

> Those submissions include the following expert reports: The November 8, 2021 expert report by Elizabeth B. Knight (ECF No. 322, Ex. A) (The "Knight Report"); the December 17, 2021 rebuttal report by Elizabeth B. Knight (ECF No. 322, Ex. B) (the "Knight Rebuttal Report"); the November 9, 2021 expert report of Lee Loetz (ECF No. 312-5, Ex. 1) (the "Loetz Report"); and the December 17, 2021 rebuttal expert report of Lee Loetz (ECF No. 312-5, Ex. 2) (the "Loetz Rebuttal Report"). LEGO also submitted in support of the instant motion the Declaration of Elizabeth B. Knight (ECF No. 322) (the "Knight Declaration"), and ZURU submitted the Declaration of Lee Loetz (ECF No. 312-5) (the "Loetz Declaration").

Id. at 4.

With respect to substantial similarity, the court applied the more discerning observer test and explained why, taking into account only the protectable elements of the Minifigure Figurine, the overall look and feel of the Third Generation Figurines is substantially similar to the Asserted Copyrights.

With respect to likelihood of confusion, the court evaluated the Polaroid factors and concluded:

> After evaluating the Polaroid factors in light of the record here, the court concludes that LEGO is likely to be able to establish that the Third-Generation Figurines are likely to cause confusion. This is so because LEGO is likely to be able to show that each of the six Polaroid factors that bear on the ultimate question of likelihood of confusion as to the source of the products at issue here supports such a conclusion.

Id. at 16.

After the Supplement to Order was filed, ZURU appealed and the appeal was dismissed for lack of appellate jurisdiction. The Court of Appeals explained:

> Because the existing preliminary injunction "rightly applies to any figurine that meets the legal standard for copyright infringement (substantial similarity) or trademark infringement (likelihood of confusion)[,]" id., if the Third Generation figurines are substantially similar to *or* likely to be confused with Lego's Minifigure, they would fall within the existing preliminary injunction order (without modification), and we would lack jurisdiction over this appeal. As set forth below, we conclude that we lack appellate jurisdiction because the district court correctly determined that the Third-Generation figurines fall within the existing injunction both because of their substantial similarity to, and likelihood of confusion with, Lego's Minifigure.

Lego A/S v. Zuru, Inc., No. 24-634-cv, 2025 WL 3537350, at *2 (2d Cir. Dec. 10, 2025) (alteration in original).

## II. LEGAL STANDARD

Rule 13(e) provides that "[t]he court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." Fed. R. Civ. P. 13(e). "The purpose of Rule 13(e) is to further judicial economy by allowing parties to litigate in one action all claims they have with respect to each other . . . and to bring a controversy up to date." Gasser Chair Co. v. Infanti Chair Mfg. Corp., 1991 WL 10931, at *1 (E.D.N.Y. Jan. 24, 1991).

Rule 15(d) provides that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995). "Leave is normally granted, especially when the opposing party is not prejudiced by the supplemental pleading." Id. "Th[e] liberal amendment policy of Rule 15

applies to requests to add counterclaims pursuant to Rule 13(e)." Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc., No. 99 CIV 4677(WK), 2001 WL 1702151, at *4 (S.D.N.Y. Jan. 11, 2002); see also BAT LLC v. TD Bank, N.A., 2018 WL 4922736, at *6 n.7 (E.D.N.Y. July 31, 2018) ("the standards for amendment or supplementation under Rule 13 are substantially the same . . . [as] Rule 15"); Gasser Chair, 1991 WL 10931, at *1 ("Rule 13 must be read in conjunction with Rule 15 of the Federal Rules of Civil Procedure.").

Rule 16(b) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[W]here a party's motion to amend would require altering a court's scheduling order, the party must satisfy both Federal Rules of Civil Procedure 15 and 16 to be permitted to amend." Int'l Techs. Marketing, Inc. v. Verint Sys., Ltd., 850 F.App'x 38, 43 (2d Cir. 2021) (internal quotation marks omitted); accord Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). "[A] finding of 'good cause' depends on the diligence of the moving party." Parker, 204 F.3d at 340. "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).

**III. DISCUSSION**

ZURU states that its objective is to have the court "decide the parties' rights as to the Third-Generation Figurines on a targeted, product-specific record, within the existing case." ZURU's Mot. for Leave to File Suppl. Counterclaims and Mod. Sch. Or., ECF No. 368 at 2. The court has already done so.

The court granted summary judgment in favor of LEGO on its claim for copyright infringement with respect to the Asserted Copyrights because it concluded that there is no genuine issue as to, inter alia, the fact "that a more discerning observer would conclude that the total concept and overall feel of the First Generation and Second Generation MAX Figure is substantially similar to that of the Minifigure figurine." Lego A/S, 827 F. Supp. 3d at 357. The court granted summary judgment in favor of LEGO on its claims for trademark infringement because it concluded that there is no genuine issue as to, inter alia, the fact that ZURU "used a similar mark that is likely to cause consumer confusion as to the source of Zuru's MAX Figures." Id. at 402.

Having been granted summary judgment on these claims, LEGO is entitled to the permanent injunction it requested in the Verified Complaint. LEGO did not limit its request for a

permanent injunction to the First Generation MAX Figures. (The Second Generation MAX Figures did not exist when the Verified Complaint was filed.) Rather, LEGO requested a permanent injunction against ZURU covering products

> containing unauthorized reproductions of the copyrighted and trademarked Minifigure figurine, including any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks[.]

Compl., ECF No. 1 at 53.

Hypothetically, if ZURU were to develop "Fourth Generation Figurines" that are substantially similar to the Asserted Copyrights or are likely to be confused with the Asserted Trademark, they would be subject to the permanent injunction. Similarly, the Third Generation Figurines will be subject to the permanent injunction because they are substantially similar to the Asserted Copyrights and are likely to be confused with the Asserted Trademark. The determination that the Third Generation Figurines are substantially similar to the Asserted Copyrights and likely to be confused with the Asserted Trademark was made on a "product-specific record", as reflected in the Supplement to Order. That record included not only the parties' submissions from the preliminary injunction proceedings and their submissions in connection with their cross-motions for summary judgment, but also the expert declarations with respect to the Third Generation Figurines.

With respect to ZURU's desire to file supplemental counterclaims, as discussed above, the purpose of Rule 13(e) is to "further judicial economy by allowing parties to litigate in one action all claims they have with respect to each other . . . and to bring a controversy up to date." Gasser Chair Co., 1991 WL 10931 at *1. Permitting ZURU to file its proposed new counterclaims would not serve the purpose of Rule 13(e). They present no claim that would be new to this case. The parties have made extensive submissions with respect to the Third Generation Figurines, and the court has ruled on the parties' motions. LEGO is entitled to the permanent injunction it requested in the Verified Complaint. The scope of that permanent injunction will be the same as the scope of the Preliminary Injunction. The court has determined that the Third Generation Figurines fall within the scope of the preliminary injunction, both because of their substantial similarity to the Asserted Copyrights and because of their likelihood of confusion with the Asserted Trademark.

In addition, ZURU's motion should be denied on the basis of undue prejudice to LEGO. ZURU seeks to generate a "product-specific record" with respect to the Third Generation Figurines. ZURU's Mot. for Leave to File Suppl. Counterclaims and Mod. Sch. Or., ECF No. 368 at 2. However, there is already such a record in this case, and granting ZURU's request, which includes a

request for additional "discovery and supplemental summary judgment briefing" would merely be giving ZURU a "second bite at the apple." This would constitute undue prejudice to LEGO in light of the extensive discovery and briefing that preceded the cross-motions for summary judgment.

In addition, unless ZURU is given such a "second bite at the apple," permitting it to serve a supplemental pleading in this case would be futile because "where a motion to amend is filed following a motion for summary judgment, 'even if the amended complaint would state a valid claim on its face,' leave to amend may be denied where 'the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law[.]'" Morritt v. Stryker Corp., 973 F. Supp. 2d 177, 183 (E.D.N.Y. 2013); see also Smith v. P.O. Canine Dog Chas, No. 02-CV-06240, 2004 WL 2202564, at *12 (S.D.N.Y. Sept. 28, 2004) ("Where, however, a summary judgment motion has been made and evidence outside the pleadings has already been submitted, the court must determine whether the amendment would be futile under the summary judgment standard.").

For these reasons, ZURU's motion to amend the scheduling the order is also being denied.

**IV. CONCLUSION**

For the reasons set forth above, ZURU's Motion for Leave to

File Supplemental Counterclaims and Modify Scheduling Order (ECF No. 368) is hereby DENIED.

It is so ordered.

Dated this 15th day of October 2026, at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge